### F. UMSCHEID V. A. SCHOLZ ET AL.*

No. 6950.

1. **Practice—Demurrer to Evidence.**—If the evidence produced by the plaintiff on the trial fails to show a case that would have justified the court in submitting the issues to the jury, no possible injury can result to the plaintiff by the court rendering judgment for the defendant. The defendant demurred to the evidence of the plaintiff, and the court on the demurrer rendered final judgment for the defendant.

2. **Calls in Conveyance.**—The western line in the field notes of the land conveyed was described, "thence along said western wall up the river from said southwest corner to the northwest corner of the lot." *Held*, no wall existing where called for, the call for a line running from an established corner on the river up the stream to another corner on the river must be held to be a call for the river as the west line of the land.

3. **Reservation in a Deed.**—In a deed for a lot in San Antonio fronting on the San Antonio River was the reservation, "it being understood that the public thoroughfare formerly existing along the edge of the river at this point is not intended to be conveyed by these presents, the corporation of the city of Bexar having the right to open said thoroughfare whenever it sees fit." *Held*, that by such deed the grantee took no title in the land so reserved; whether the fee therein was in his grantor or in the city was of no consequence as to his rights, as he took no right therein.

4. **Construction of Deeds.** — See discussion of the legal effect of certain deeds relied upon as granting title to plaintiff to land lying along the river on west side of a lot owned by the plaintiff, save as to exceptions reserved in his title.

5. **Homestead—Limitation.**—It seems that title by limitation may be acquired against homestead rights in community property. See example.

6. **Failure of Trial Judge to File Conclusions, etc.**—Where it is evident that no injury resulted from the failure of the trial judge to file his conclusions of fact and of law after request, such error is no ground for reversal.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN.

The following statement from brief of appellant is accepted by the appellees:

This suit was brought by F. Umscheid against A. Scholz and the city of San Antonio, on the 27th day of August, 1885. Before the trial said Umscheid died, and his heirs were made parties plaintiff.

---

* This and the following case were not received by the Reporter with the work of 1891.

[265]

The action is one of trespass to try title; but as no written evidence of any grant of the land out of the sovereignty can be found, plaintiffs pleaded at length facts from which they ask that a grant be presumed, and especially aver, that by virtue of the facts pleaded, a grant from the sovereignty should be presumed to Baron de Bastrop. They further pleaded facts which they alleged were sufficient to show a valid chain of title from said Bastrop down to Josepha Leal, although the written evidence of some of the different links in said chain could not be produced. They specially averred title in plaintiffs' ancestor, the original plaintiff, by virtue of said presumed grant and conveyances to Josepha Leal, and by limitation of three, five, and ten years; and further averred, that plaintiffs were entitled to recover under their said title, and under title acquired by said limitation, and by virtue of prior possession of the land and eviction by defendants; and because defendants claimed to hold the land under a conveyance from their said ancestor, which did not embrace the land herein sued for.

Defendant city of San Antonio answered by general denial, plea of not guilty, plea of three, five, and ten years limitation, and of stale demand.

Defendant Scholz adopted the answer of his codefendant, and pleaded further, that he held the property as a lessee of the city of San Antonio.

Plaintiffs filed their supplemental petition, in which they alleged that they did not desire to deprive said Scholz of any of the benefits of his lease, and offered, in the event they recovered, to allow him to remain in possession under the terms of said lease, simply substituting themselves as landlords in place of the city.

The case was tried by a jury, and after all of plaintiffs' evidence was in, defendant demurred to same, and the court withdrew the cause from the jury, and after argument of counsel, sustained said demurrer, and entered judgment for defendants for the premises in controversy and for costs.

Plaintiffs excepted to the action of the court in sustaining said demurrer, embodied all of the facts in a bill of exceptions, and same was signed by the court. Plaintiffs likewise made written demand for a finding by the court of its conclusions of fact and law. This demand the court refused, and plaintiffs saved their bill of exceptions to such refusal.

To the judgment of the court, plaintiffs in open court excepted and gave notice of appeal. Statement of facts, appeal bond, and assignment of errors were duly filed.

The following plat will show the property sued for better than any written description contained in the pleadings or evidence.

*Denman & Franklin*, for appellant.—1. The defendants having demurred to the evidence, the whole of same and all reasonable inferences fairly deducible therefrom will be considered as true, and the Supreme Court will render for plaintiffs if it reverses the judgment of the lower court. Stephens v. Hix, 38 Texas, 656; Harwood v. Blythe, 32 Texas, 800; Hughes v. Chrysty, 26 Texas, 230; Booth v. Cotton, 13 Texas, 359.

As to presumption of grants: Sulphen v. Norris, 44 Texas, 204; Lewis v. City of San Antonio, 7 Texas, 288; De Cordova v. Smith, 9 Texas, 129; Bell v. McDonald, 9 Texas, 378; The State v. Purcell, 16 Texas, 310; Taylor v. Watkins, 26 Texas, 699; Railway v. Jarvis, 69 Texas, 541.

Title by limitation: Dittmar v. Dignowity, 78 Texas, 22; Moody v. Holcomb, 26 Texas, 714; Smith v. Montes, 11 Texas, 24.

Extent of possession: Whitehead v. Foley, 28 Texas, 268; Chandler v. Rushing, 38 Texas, 591; Wofford v. McKinna, 23 Texas, 36; Cunningham v. Frandtzen, 26 Texas, 34.

What is necessary to show title under common source: Wilson v. Palmer, 18 Texas, 592.

Plaintiff in trespass to try title may recover on prior possession: Keys v. Mason, 44 Texas, 140; Caplen v. Drew, 54 Texas, 493; Lea v. Hernandez, 10 Texas, 137; Wynne v. Logan, 6 Texas Law Rev., No. 12; Duren v. Strong, 53 Texas, 381.

What plaintiff must prove to recover in trespass to try title: Keys v. Mason, 44 Texas, 140.

Call in deed for a stream carries the line to the middle of stream: Norcross v. Griffiths, 56 Am. Rep., 642; Sleeper v. Loconia, 49 Am. Rep., 311.

Possession of easement over land can not be adverse to owner of fee: Orphans' Assn. v. Troy, 32 Am. Rep., 289.

2. The court erred in refusing to file with the papers of this cause its conclusions of law upon the facts admitted to be true by the demurrer to plaintiffs' evidence. Sayles' Civ. Stats., art. 1333, and note.

*Upson & Bergstrom*, for appellees.—It appears from the evidence in this cause, that the city of San Antonio had acquired the use of a thoroughfare along the edge of a river, at or before the time that Edward Dwyer, appellant's vendor, conveyed to the appellant, and that part of the land—that is to say, along the edge of the river—was especially reserved in the conveyance made by Dwyer to Umscheid. When the edge of the river is spoken of, it certainly means to the water's edge; therefore Umscheid under said conveyance, admitting that Dwyer had title to the river, acquired title to the property up to the thoroughfare only. It further appears that Umscheid so construed the deed, for it appears from the evidence that he inclosed his lot so purchased with a stone wall running west to the thoroughfare, leaving between the river

and such wall sufficient space for the passage of wagons and carts. It is true he left a gate in his back wall, so that he could go from his lot to the river and spring for water; but that is no evidence of possession or claim of ownership in the land on the bank of the river, because the evidence further shows, that the general public used the spring and bank of the river for the same purpose.

It again appears, that in 1872, when the city desired to widen the thoroughfare along the river bank, the city purchased from Umscheid thirteen feet of land off the east end of his lot and east of the said thoroughfare, there being then the rock wall at the east end of his lot. It was provided that the city should move the wall thirteen feet east, so as to leave his west wall on his then new east line, and the wall as it theretofore stood is designated as the wall now separating the lands of Umscheid and the city, thus recognizing that the land lying west of the old wall was the land of the city. Umscheid not having acquired title to the land in controversy, the title thereto is either in the city or in Dwyer. In either event, plaintiffs could not recover.

STAYTON, CHIEF JUSTICE.—This action was brought by F. Umscheid, against the city of San Antonio and its tenant, A. Scholz, to recover the land described in the petition as follows:

"Beginning at a point where the north side of Alameda (now Commerce) Street strikes the river; thence with said north side of said street south 75¾ degrees east to the east side of Losoya Street; thence up said east line of Losoya Street in a northerly direction to the north line of a lot of ground conveyed by Edward Dwyer to said F. Umscheid, deceased, on the 24th of May, 1849, by deed recorded in book 16, pages 195 and 196, of records of deeds of Bexar County, Texas; thence with said north line north 75¾ degrees west to the mouth of the spring branch emptying into the San Antonio River; thence down said San Antonio River to the place of beginning."

Umscheid died pending the action, and his heirs became parties. After plaintiffs had introduced all their evidence defendants demurred to it, whereupon the cause was withdrawn from the jury and the court entered a judgment for the defendants.

We do not understand appellants to complain because the case was withdrawn from the jury, but to complain that the court held on the evidence introduced that no title was shown in plaintiffs. If it be true that all of plaintiffs' evidence failed to present a case which would have justified the court in submitting to the jury the question of title, then no possible injury resulted to plaintiffs.

The lot of which the land in controversy was a part extended from Alamo Street westward to the San Antonio River, its southern boundary being Alameda Street and its northern a line running parallel with that street from a point on Alamo Street to the mouth of a spring

branch which emptied into the San Antonio River. There was evidence tending to show, that at an early day the lot was granted to Baron de Bastrop, and that through him title to it vested in Edward Dwyer prior to May 24, 1849; and for the purposes of this appeal it may be assumed that the evidence was sufficient to show title to the entire lot in Edward Dwyer.

On May 24, 1849, Edward Dwyer conveyed to plaintiffs' ancestor by a deed which described the land conveyed as follows: "Beginning at the point where the line of the north side of the Alameda strikes the San Antonio River; thence with the Alameda south 75¾ degrees east 59 varas to corner of Alamo Street; thence with Alamo Street north 1 degree east 5½ varas to a house of Mr. Tarrin; thence with said house north 79 degrees west 6¼ varas, and north 11 degrees east 11¼ varas; thence north 75¾ degrees west 60 varas to the mouth of the spring branch emptying into the San Antonio River; thence down the river to the place of beginning. It being understood that the public thoroughfare formerly existing along the edge of the river at this point is not intended to be conveyed by these presents, the corporation of the city of Bexar having the right to open said thoroughfare when it sees fit."

The evidence shows, that the father of plaintiffs inclosed the lot with a stone wall extending toward the river to about where the center of Losoya Street now is, and that between that wall and the river was a pass way used by the public; but it appears that on August 3, 1872, the city council, for the city of San Antonio, desiring to widen Losoya Street eastward, the father of plaintiffs, for the sum of $1300, made an agreement with the city, whereby he "granted, relinquished, ratified, and confirmed unto the party of the second part (the city of San Antonio) all the estate, right, title, and interest that the said party of the first part has to and in a certain tract of land lying and being in the city of San Antonio, State and county aforesaid, and bounded as follows: "From a point 19 feet distant from the northwest corner of the lot on the northern boundary thereof; thence in a straight line to a point in the Commerce (Alameda) Street wall of said lot, 13 feet from the southwestern corner of said lot; thence down Commerce Street to said southwest corner; thence along said western wall up the river from said southwestern corner to the northwestern corner of the lot, and thence 19 feet along the northern line of the lot to the place of beginning."

This conveyance contains the further agreement, that "the party of the second part (city of San Antonio) agrees and binds itself to rebuild the wall between the property of the party of the first part and the property herein conveyed, of the same height and breadth and in every way as substantial as the one *which now separates the lands of the parties hereto*, and the city further binds itself to remove and rebuild the privy of the said Umscheid in a substantial and workmanlike manner; and

it is further agreed and understood, that the rebuilding of the wall and privy shall be at the expense of the city of San Antonio."

In accordance with that agreement the city removed the wall, then standing about where the center of Losoya Street now is, to the place which since that time has been the eastern side of Losoya Street, and also removed the privy to a point east of Losoya Street as it has been since that time; and there is no pretense that the father of plaintiffs after making the conveyance ever claimed any part of Losoya Street until this action was brought, on August 2, 1885; and the real claim now seems to be, that there is a strip of land west of Losoya Street, and between that street and the river, which belongs to plaintiffs. Plaintiffs introduced other evidence tending to show the existence of a street running along the western part of the lot on the river side.

The deed from Dwyer to Umscheid not only recognizes the existence of a street "along the edge of the river at this point," but excepts this from the conveyance; and whatever that was, it is evident Umscheid never had title to either through the conveyance or by limitation.

The conveyance from F. Umscheid, if the corners of the lot were on the river, evidently embraces the land extending toward the middle of the stream as far as the same was subject to private appropriation, whether the question of boundary in this case should be governed by the rules of the common or Spanish law.

The first call in that conveyance is for "a point 19 feet distant from *the northwestern corner of the lot* on the northern boundary thereof," and the last call is from the northwestern corner *of the lot* to a point first called for as the beginning point. From the point 19 feet on the north line of the lot from the northwestern corner, the call is for a straight line to Commerce Street, *"thirteen feet from the southwestern corner of said lot,"* and the next call is, "thence down Commerce Street to said southwest corner." That this southwest corner did not mean the southwest corner of the lot as then inclosed by Umscheid, but what was claimed to be the southwest corner of the lot on the river, is evidenced by the next call, which is, "thence along said western wall *up the river from said southwestern corner to the northwestern corner of the lot.*" Plaintiff's own evidence shows, that the southwest and northwest corners of the lot were on the river, and the latter at the mouth of the spring branch; and there is no evidence whatever tending to show that there was any wall existing at the time the conveyance was made, west of that which then stood where the center of Losoya Street now is, but it is shown that the city subsequently erected a wall on the west side of that street.

The call for a line running from a corner on the river up the river to another corner on the river must be held to be a call for the river as a line, in the absence of evidence showing that there was a wall running from the southwest corner of the lot to the northwest corner thereof.

What the parties understood to be the western corners of the lot is shown by the deed from Dwyer to Umscheid, "where the north side of the Alameda strikes the San Antonio River," at "the mouth of the spring branch emptying into the San Antonio River," and from the latter point to the former the call was, "thence down the river to the place of beginning;" but as we have before seen, Dwyer's deed excepted from its operation the land over which the city had right of way at that time; and whether the fee to that was in the city or in Dwyer is unimportant, as it did not pass to Umscheid by Dwyer's deed.

The words, "which now separates the lands of the parties hereto," found in the conveyance from Umscheid to the city, and referring to the wall which then stood where the center of Losoya Street now is, is a clear recognition of the fact that all that part of the lot west of that wall then belonged to the city. If the calls in that conveyance for west corners of the lot had been intended for calls for corners of the lot as then inclosed by Umscheid, and not for corners on the river as they are claimed to have actually existed and as they were described in the deed from Dwyer to Umscheid, the call to run up the river would not have been made in Umscheid's conveyance, but other descriptions would have been given which would have restricted the conveyance westward to the wall then standing, and this not having been done, the words used must be given their ordinary signification. When we look to the fact that the city was desiring to purchase land, or to quiet its title to land, for the purpose of widening Losoya Street, it is wholly improbable that the city would have sought a conveyance to only a part of the land to be covered by that street, if the fact was not recognized by the parties to the conveyance that the residue of the land to be covered by that street was already owned by the city.

The reasonable construction of the exception in the deed from Dwyer to Umscheid is, that it excepted from the conveyance the land on which the public thoroughfare formerly was, and not the mere right to its use; and that this was so is recognized by the conveyance made by Umscheid in that part in which it is declared that the wall erected by him "separates the lands of the parties hereto." This recital further shows the locality of the land excepted from the conveyance under which he held; and as the conveyance from Umscheid to the city embraces all that part of the lot between what is now the east side of Losoya Street and the San Antonio River, but one question could arise, if it be conceded that Umscheid acquired by the conveyance from Dwyer title to all the lot which he had inclosed at the time he conveyed to the city. That question would relate to the power of Umscheid alone to convey any part of the land so inclosed, if it was his homestead; but there is no assignment of error which raises this question, and it is probably true, were the question raised, that the evidence would require a holding that, as to so much of the lot as well as that west of it, the city was

entitled to a judgment under its plea of limitation. The evidence does not show that Umscheid made such adverse claim and had such adverse possession of the land west of the place where the western wall of his inclosure stood at the time he conveyed to the city as to give him title to that part of the lot by limitation; nor can there be any pretense that he had such adverse possession of any of the land west of the east line of Losoya Street after his conveyance as would confer title upon him..

As this case was tried, it must be considered that appellants consented that the case should be withdrawn from the jury and tried by the court on the evidence they had introduced; and as the evidence was such as to sustain the judgment, if not absolutely to require it, it can not be disturbed on the facts.

The district judge when requested should have made out and filed conclusions of fact and law; but as there is no conflict in the evidence on the vital questions involved in the case, his failure to do so does not furnish sufficient ground for the reversal of the judgment.

The judgment will be affirmed.

*Affirmed.*

Decided June 6, 1891.

A motion for rehearing was overruled at Austin Term, 1892.

JUSTICE HENRY dissenting.