## THE CITY NATIONAL BANK OF FORT WORTH v. J. N. STOUT.

### (Case No. 4998.)

1. CONTINUANCE — DUE DILIGENCE.— An application for a continuance, made in May, 1883, on account of the absence of a witness residing in the county, who was alleged to have been subpœnaed in May, 1882, no other fact in regard to due diligence being shown, was properly overruled. The witness may have refused at a former term to obey the subpœna.

2. RAISED CHECK — FRAUD — CONTRACT — RIGHT OF ACTION.— B., desiring to remit, as a present, $500 to his son-in-law (Frank Crandall), went into a bank with C., who owed B., and who agreed to furnish him a draft for the amount. C. drew his check on the bank for $500, B. informing the cashier that he wanted exchange for Crandall for that amount on New York. The cashier thereupon drew his draft as follows:

"$500.                    THE CITY NATIONAL BANK, FORT WORTH.
                       "FORT WORTH, TEXAS, September 21, 1881.
  "Pay to the order of Frank Crandall five thousand dollars.
                                   "S. W. LOMAX, Cashier.
  "To Donnell, Lawson & Co., New York.
  "No. 875."

B. received the draft at the time it was drawn, placed it in a letter which his wife had before written to Crandall, and the cashier of the bank, at his request, placed both letter and draft in an envelope, which the cashier directed to Crandall, and mailed with the bank mail. The figures $500 were by some unauthorized person afterwards changed to $5,000, and it was paid in New York as a draft for that amount. The mistake was discovered by the bank on the 19th of October following. In a suit brought against the bank by B. to recover money deposited by him with the bank, and which it refused to pay or deliver, the bank set up the mistake and the subsequent fraudulent alteration, and payment of the check, and sought to make B. liable for $4,500. *Held:*

(1) There was no contract between the bank and B. which created any liability from B. to the bank, nor did B. commit any unlawful act from which a liability could arise.

(2) B., having no notice of the mistake and receiving no benefit from it, could not be made liable for any fraud the payee may have committed.

3. PRACTICE — STATEMENT BY JUDGE OF CONCLUSIONS OF LAW AND FACT.— An application to the judge before whom a cause is tried to give a statement of his conclusions of law and of fact should be promptly made, by motion, and the attention of the judge called thereto. An unreasonable delay in doing this should be avoided, and, when such delay occurs, the failure of the judge to state his conclusions will be no cause for reversal.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

This was an action brought by the appellee, Stout, against the City National Bank of Fort Worth for the recovery of $1,428.29, which plaintiff alleged he deposited with defendant, and that defendant failed and refused to pay him that amount, although requested so to do.

The appellant, in its answer, substantially admitted that plaintiff

deposited the money and that it had never been repaid, but set up in avoidance of plaintiff's demand and pleaded in offset as follows:

That on the 21st day of September, 1881, plaintiff went into defendant's banking house and requested defendant to sell him certain exchange on the city of New York to the amount of $500, and to make its draft or bill of exchange on some bank in New York for the $500, payable to one Frank Crandall, who was plaintiff's son-in-law; that the bank then, through its cashier, S. W. Lomax, drew its draft as follows:

"$500.    THE CITY NATIONAL BANK OF FORT WORTH,

  (Original)    "FORT WORTH, TEXAS, Sept. 21, 1881.

"Pay to the order of Frank Crandall five thousand dollars.

        "S. W. LOMAX, Cashier.

"To Donnell, Lawson & Simpson, New York.

"No. 875."

and delivered the same to plaintiff; that the figures on the margin of the draft were correct ($500) at the time the draft was made, but had afterward been changed by the addition thereto of another figure 0, by some one unknown to defendant, and that the bankers Donnell, Lawson & Simpson, upon whom said draft was drawn, had in good faith cashed the same, believing it to be a *bona fide* draft for the sum of $5,000; that defendant did not discover the mistake until October 22, 1881, long after the draft had been paid to plaintiff and his assignees for the full amount of $5,000, and upon settlement with said Donnell, Lawson & Simpson.

That defendant immediately upon discovering the error, and upon ascertaining that Donnell, Lawson & Simpson had cashed the draft for the sum of $5,000, demanded of plaintiff an explanation thereof, and that plaintiff repay to defendant the sum of $4,500, which it alleged defendant by mistake paid and caused to be paid to him and to Crandall, but that neither plaintiff nor Crandall would explain to defendant their fraudulent action, and they both refused to repay to defendant the sum of $4,500 or any part thereof; but insisted upon their right to take advantage of the mistake.

That Crandall was a non-resident of the state and had no property of any kind in the state, and that plaintiff had no property liable to execution.

Defendant then set up that plaintiff purchased the $5,000 draft; that plaintiff and his payees received the benefit of the same, and that plaintiff thereby became liable and promised defendant to pay it the sum of $4,500 balance.

The plaintiff replied by general and special exceptions, and as

ground of special exception, (1) that defendant set up damages in tort as a defense against an action for debt; (2) that the several counts were inconsistent with each other, and (3) that defendant set up irrelevant matter, viz.: that Crandall was plaintiff's son-in-law, and that defendant had asked for and been refused an explanation by plaintiff; and in reply to the plea in reconvention set up that the draft was sold by the bank at the request of A. T. Wooten, who paid defendant for the same; and that Wooten paid the same on an indebtedness which he, Wooten, owed plaintiff; that in total ignorance that the draft was for $5,000, plaintiff gave the draft to defendant and requested the bank to mail it to Crandall, which the bank did, and that plaintiff made a gift of the draft to Crandall through the bank; that if the draft was for the sum of $5,000 instead of for $500, then it was issued by defendant and mailed by defendant to Crandall, and plaintiff was then innocent that any mistake had occurred, and in law should not be chargeable with the negligence of defendant and to account for its carelessness.

On the 21st day of May, 1883, both parties announced ready for trial, and waived a jury, and plaintiff's petition was read, when court adjourned over until the 22d inst., without further action in the case.

On the reassembling of court on the 22d inst., and before the trial had progressed, defendant asked leave of the court to withdraw its announcement of ready for trial, and present an application for a continuance; and the court having granted leave, defendant presented its application for a continuance, referred to in the opinion, which was overruled.

Judgment for plaintiff for $1,586.95.

One Wooten owed the appellee, who desired to remit as a present $500 to his son-in-law, Crandall. Wooten and appellee entered the bank, when Wooten, who had money deposited there, drew his check in favor of appellee for that amount. The cashier being informed by appellee that he wished to remit $500 to Crandall, drew a draft for that amount, a copy of which is in the syllabus. Appellee never examined the draft, and knew nothing of the mistake until after it was drawn. The draft was placed in a letter previously written by appellee's wife to Crandall, and the letter and draft handed to Lomax, the cashier, who, by request, directed the envelope in which he placed them to Crandall, and mailed it with the bank mail. Appellee had the amount of money in the bank sued for, when it refused to pay him. Lomax, the cashier, testified that a mistake was made in drawing the check as above stated.

*Ball & McCart*, for appellants, on the application for continuance, cited: R. S., art. 1277; Chilson *v.* Reeves, 29 Tex., 279; Prewitt *v.* Everett, 10 Tex., 283; Hipp *v.* Bissell, 3 Tex., 18.

On the right to recover back the money paid by mistake, they cited: Garland *v.* Salem Bank, 9 Mass., 408; Kingston Bank *v.* Eltinge, 40 N. Y., 391; Lawrence *v.* Amer. Nat. Bank, 54 N. Y., 432; Gillespie *v.* Moon, 2 Johns. Ch., 585; Coger *v.* McKee, 2 Bibb, 321 (5 Am. Dec., 610); Fisher *v.* May, 2 Bibb, 448 (5 Am. Dec., 626); Lewellen *v.* Garrett, 58 Ind., 442; City Bank *v.* National Bank, 45 Tex., 203; Alston *v.* Richardson, 51 Tex., 1; Story on Contracts, 422, 423.

*Templeton & Carter*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— This action was brought on the 27th of December, 1881, and was not tried until May 22, 1883. The parties having announced ready for trial on the preceding day, the pleadings for the plaintiff having been read on that day, on the morning of 22d, leave was given to the defendant to withdraw its announcement for trial, whereupon it made an application for continuance, based on the absence of a witness stated to be a resident of the county and subpœnaed on May 5, 1882.

The bill of exceptions does not show whether the application for a continuance was the first, second or third; but it was in substance such an application as the statute requires for a first continuance, except that it did not state that due diligence had been used to procure the testimony.

The application was defective if considered a first application; and, if it was a second or third application, had but few of the statements required, and the court did not err in overruling it.

A bill of exceptions should show whether an application for a continuance was a first or subsequent application (Arnold *v.* Hockney, 51 Tex., 46); and when a witness has been subpœnaed so long before the application is made, it should clearly appear that due diligence had been used. This is not sufficiently shown in this case, for the witness may have disobeyed the subpœna at former terms.

The appellee could become responsible to the appellant only by reason of a contract or tort. There was no contract between them from which any liability whatever could arise; nor does the evidence show that the appellee was guilty of any wrongful act which would create a liability.

The mistake in the amount for which the draft was drawn was

made by the cashier of the bank, and it does not appear that the appellee had any notice whatever of the mistake when he handed back the draft to the cashier with request that he would inclose it in an envelope, direct it to Crandall, and deposit it in the postoffice with the bank's mail. The appellee received no benefit from the mistake, and however fraudulent may have been the conduct of Crandall in receiving $5,000 on the draft, which he most probably knew was intended to enable him to receive five hundred only, yet the mere fact that he was the son-in-law of Stout, to whom Stout intended to make a present of $500, could not render Stout liable to the appellant for an injury which resulted from its own want of due care and the fraud of another.

If it were shown that Stout knew of the mistake before he caused the draft to be mailed to Crandall a different question would arise.

It is not to be presumed that a judge who tries a cause will refuse to give a statement of his conclusions of fact and law when requested to do so, and that a judge has so refused must be made to appear in some way before the matter could be revised.

In this case it appears that a motion was filed and entered on the motion docket requesting such a statement, but it does not appear that this was ever called to the attention of the court; in fact, the motion seems to have been filed nearly a month after the trial of the cause.

Such applications should be made promptly, while the matter is fresh in the mind of the court, and, if made after an unreasonable delay, even a refusal to make the statement ought not to be revised.

As presented, this question cannot be revised; but we cannot see that the appellant has been in any way prejudiced by the want of such statement. There is a full statement of facts, and the case is not such a one as required such a statement for the proper presentation or understanding of it in this court.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered May 13, 1884.]