## I. & G. N. R'y Co. v. Wm. Klaus.

### (Case No. 5503.)

1. WITNESS — EXPERT — MATTERS OF SCIENCE.— When one issue was, whether a bridge constructed by a railway company across a stream had been so unskilfully constructed as to cause the waters of the stream to overflow, unskilled witnesses familiar with the bridge structure and the facts connected with the overflow were permitted to give their opinion as to whether the bridge, on account of being improperly constructed, caused the damage, and to state in that connection the facts within their knowledge.

2. FACT CASE.— See opinion for facts under which it was held that a judgment against a railway company for damages, alleged to have been caused by the overflow of land in consequence of its bridge being improperly constructed, was error.

APPEAL from Comal. Tried below before the Hon. Thomas M. Paschal.

The appellee sued to recover for damages caused to his land by the defective construction of appellant's bridge, whereby it was alleged an overflow of the stream resulted, which inundated and destroyed his growing crops. Verdict and judgment for $350. Non-professional witnesses were permitted to testify as to their opinion of the want of proper skill in the construction of the bridge, and this was assigned as error.

J. D. Guinn, for appellant, that unskilled witnesses were not competent to testify as to their opinions about bridges, and whether one was properly constructed, cited: Otis v. Thorn, 23 Ala., 460; Weaver v. Ala. C. M. Co., 35 Ala., 176; Clardy v. Callicoate, 24 Tex., 170; W. & W. Con. Rep., 1109, indorsing same in the case of Thompson v. Miller; Donnell v. Jones, 13 Ala., 510; Lincoln v. R.

R. Co.; 23 Wend., 430; 10 Johns., 281; Mills' Em. Dom., 180; Abbott's Trial Ev., 586; Wharton on Ev., 509; 1 Greenl. Ev., 440; Thornton v. Adkins, 19 Ga., 464.

*W. R. Neal*, for appellee.

Delany, J. Com. App.— Although there are sixteen assignments of error, there are only two or three questions to be determined.

The plaintiff's land was overflowed and his crops and fences swept away. He charges this to the defendant's bridge, which, he alleges, was defectively constructed; that it was so built as not to allow the floating trees, drift, etc., to pass under it; that the channel of the stream was thus obstructed, causing the water to rise above its natural level and overflow the land.

The plaintiff introduced a number of witnesses who had lived many years near the stream, who were familiar with the usual rainfall of the region. They stated that, after heavy rains, torrents of water rushed down the channel, bearing timber, trees and drift in great quantities. They then stated that, in their opinion, the openings of the bridge were not large enough to permit the passage of the drift.

The defendant objected to the evidence, and has made it the subject of several assignments of error. The objection is that these witnesses were not men of science and skill in the matter of bridge building, and hence should not have been permitted to give opinions. 1 Greenl. Ev., sec. 440. Ordinarily, witnesses must state facts only, except in certain cases in which persons of skill and learning may give their opinions. There are, however, many cases in which unskilled witnesses may give their opinions; and there is still another class of cases in which they may do so when they give, along with the opinions, the facts on which they are founded. A collection of these cases will be found in 1 Whart. on Ev., sec. 512, note 10.

The case of Porter v. Manuf. Co., 17 Conn., 249, resembles very much the one before us. In that case, witnesses who had long been familiar with a particular region, its streams and the rainfall, were permitted to give their opinions upon the question whether a dam across a stream had not been raised so high as to be unsafe. The court said: "The opinions of such persons upon a question of this description, although possessing no peculiar skill upon the subject, would ordinarily be more satisfactory to the minds of the triers than those of scientific men who were personally unacquainted with the facts of the case. And to preclude them from giving their opinions on the subject, in connection with the facts testified to by them, would be to close an ordinary and important avenue to the truth.

. . . On such a question, the judgment of ordinary persons having an opportunity of personal observation, and testifying to the facts derived from that observation, was equally admissible, whatever comparative weight their opinions might be entitled to, of which it would be for the jury to judge." See, also, College v. McHugh, 21 Tex., 256; Carroll v. Welch, 26 Tex., 147. The court, we think, did not err in admitting the evidence.

But a more serious question arises when we come to consider whether the evidence is sufficient to support the verdict. Can it fairly be inferred from the evidence that the presence of the bridge caused the overflow of the plaintiff's land? We will not stop to inquire whether the flood was one so extraordinary that the defendant ought not to have been held bound to anticipate and provide against it. After a careful examination of the evidence we cannot see any reason to believe that the bridge contributed in any material degree to the plaintiff's losses. From the plaintiff's own testimony the level of his field was more than five feet below the level of the top of the bridge. The engineer, Lucas, who made the plot, says the difference of level was more than eight feet. Only two persons saw the bridge on the night of the flood, for it lasted only a few hours. One of these was the plaintiff's witness, Marchardt. When he visited the bridge the water was within two feet of the top and rising rapidly. It was passing without obstruction through the bridge, and was as high below as above it. Thus at that time it was more than three feet deep in the plaintiff's field, according to his testimony, and according to Lucas its depth must have been more than six feet. This was some time before the bridge fell, and the witness says that the water continued to rise rapidly until the crash came.

Hood, a witness for the defendant, watched the bridge most of the night. He was near it and saw it when it fell. The water rose rapidly, passing under it without obstruction until it reached the top, when the structure gave way and was swept down the stream. The other testimony was not inconsistent with the statements of these witnesses, and in the whole record we find little or nothing to indicate that the plaintiff was injured by the presence of the bridge. There is no proof whatever that the stone fence was broken by the floating timbers after the bridge had fallen. Reluctant as we are to interfere with the verdict of a jury, we feel constrained to recommend that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted May 29, 1885.]