EMERY et al. v. BARFIELD et al.

(Court of Civil Appeals of Texas. Ft. Worth. March 8, 1913. Rehearing Denied April 4, 1913.)

1. APPEAL AND ERROR (§ 1165*) — CONCLUSIONS OF FACT AND LAW—DUTY TO FILE—EFFECT OF FAILURE.

The failure of the trial judge to file findings of fact and conclusions of law within ten days after the adjournment of the term, as required by Rev. Civ. St. 1911, art. 2075, necessitates a reversal unless there is a statement of facts in the record from which it appears that appellant could not reasonably have been prejudiced by the failure.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4522; Dec. Dig. § 1165.*]

2. APPEAL AND ERROR (§ 527*) — RECORD — FINDINGS AND CONCLUSIONS—TIME TO FILE.

The attempt of the trial judge to file findings of fact and conclusions of law after the time prescribed by Rev. Civ. St. 1911, art. 2075, does not make the findings and conclusions a part of the record on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2381–2383; Dec. Dig. § 527.*]

3. HUSBAND AND WIFE (§ 262*)—PROPERTY—BURDEN OF PROOF.

The rule that the burden of proof is on him who asserts the separate character of property does not apply where defendant denies the allegations of plaintiff who asserts the community character of the property, and plaintiff has the burden of proving the community character.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. § 262.*].

4. HUSBAND AND WIFE (§ 119*)—CONVEYANCES—VALIDITY.

A conveyance by a husband to his wife vests the separate estate in her as between the parties and their heirs, and this is true whether the conveyance so limits the estate or not.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 424–429, 447; Dec. Dig. § 119.*]

5. HUSBAND AND WIFE (§ 131*)—CONVEYANCES—SEPARATE ESTATE—EVIDENCE.

Proof that a husband caused a conveyance to be taken in his wife's name tends to show that it was the intention of the parties that the property should be her separate property, and this is true whether the consideration was paid from her separate property or from the community.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 426, 471–483; Dec. Dig. § 131.*]

6. FRAUDULENT CONVEYANCES (§ 174*)—VALIDITY—PARTIES ENTITLED TO ATTACK.

A deed fraudulent as to creditors of the grantor is binding on him and his heirs.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 530, 531, 533–536, 542; Dec. Dig. § 174.*]

7. APPEAL AND ERROR (§ 1165*)—FINDINGS OF FACT AND CONCLUSIONS OF LAW—FAILURE TO FILE—EFFECT.

Where, in a suit by children to recover an undivided community interest of their deceased father in real estate, the children had the burden of proving the community character of the property on various issues, the failure of the court to file findings of fact necessitated a reversal of a judgment for the children for the failure notwithstanding a statement of facts probably prevented defendant from making a proper presentation of the case to the appellate court within court rule 62a (149 S. W. x).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4522; Dec. Dig. § 1165.*]

Conner, C. J., dissenting.

Appeal from District Court, Taylor County; T. L. Blanton, Judge.

Action by F. H. Barfield and others against S. E. Emery and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Ben L. Cox and Eugene De Bogory, both of Abilene, for appellants. J. M. Wagstaff, of Abilene, for appellees.

CONNER, C. J. For the second time appellants present to this court for revision an adverse judgment in a suit against them by appellees F. H. Barfield and others, who are the children and children-in-law of Susan Sullivan and J. M. Sullivan, deceased, to recover the alleged undivided community interest of their father, J. M. Sullivan, in a part of the Samuel Andrews survey situated in Jones county. See 138 S. W. 419. On the former appeal the judgment was reversed because of an erroneous charge. The issue upon which the case turns is whether at the date of the death of J. M. Sullivan the land in controversy was community property or the separate property of Susan Sullivan, the surviving wife under whom appellants claim. The trial now presented for review was before the court without a jury, and the plaintiffs again secured a judgment in their favor, from which this appeal is prosecuted.

[1] The first question presented is one of practice. Within due time after the trial appellants filed their written motion under the statute requesting the court to file his findings of fact and conclusions of law, and this motion was called to the court's attention in due time and order. The court failed to file his conclusions within ten days after the adjournment of the term, as required by article 2075, Revised Statutes 1911, although he did do so later, which, however, have not been brought up in the record. The court in his explanation to the bill of exceptions presenting the matter undertakes to excuse his failure on the ground that he and his home were quarantined by duly constituted health officers during the period necessary for the preparation of the conclusions, and this explanation is controverted by a number of affidavits of contrary import. We, however, are of opinion that the issue presented by the explanation and controverting affidavits must be disregarded as immaterial, for the effect of a failure to file such conclusions upon the rights of the losing party is necessarily the

same whether the court's failure be culpable or wholly blameless. The question then is: Shall the judgment be reversed because of the failure of the court to file his conclusions of fact and law as requested? The majority think it must be so ordered, while the writer entertains a contrary view. In explanation of the difference of opinion among us, it should be stated that a statement of facts was duly made out and filed in the court below which was agreed to by all parties and approved by the court, and that therefrom, omitting transmutation of title not thought to be necessary to give, it in effect appears that the land involved in controversy became vested in J. M. Sullivan in 1882 as the community property of himself and wife, Susan Sullivan. It is undisputed that on the 17th day of September, 1891, one R. H. Parker instituted his suit against J. M. Sullivan in a justice's court upon a promissory note for $34.52; that on October 26, 1891, judgment was rendered for the plaintiff against the defendant J. M. Sullivan for the sum of $23.50, together with costs, and that execution issued upon such judgment on November 10, 1891, which was returned showing a levy upon a small amount of cash in the hands of a constable; that an alias execution by virtue of said judgment was issued December 9, 1891, which at an hour not shown was levied upon land including that in controversy on December 10, 1891, by virtue of which levy the land in controversy was later sold to R. H. Parker for $25. The regularity of these proceedings is in no wise questioned. On the day of the levy of the alias execution, to wit, on December 10; 1891, at an hour not shown, J. M. Sullivan made a quitclaim deed to his wife, Susan Sullivan, conveying 1,150 acres of the Samuel Andrews survey (including the land in controversy) for a recited consideration of $10 paid and Susan Sullivan's assumption of a mortgage indebtedness of $2,500. The evidence is silent as to whether this deed was executed before or after the Parker levy. It was not recorded, however, until February 23, 1892, some time after the levy and return of the execution. Later, viz., on March 29, 1892, the said R. H. Parker executed a quitclaim deed to Susan Sullivan for a consideration of $75 paid, conveying 951 acres of the Samuel Andrews survey which included the land in controversy. J. M. Sullivan died intestate on September 7, 1892, and this suit was instituted on April 19, 1909.

There is further evidence showing later conveyances from Susan Sullivan to her son, S. E. Emery, one of the appellants herein, upon the consideration of caring for her during the remainder of her life, and from S. E. Emery conveying 100 acres to the appellant W. L. Grogan; but, as the particulars relating to these conveyances are not deemed pertinent to the present inquiry they need not be further noticed.

Susan Sullivan at the time of the trial was about 88 years of age, and the only substan-tial controversy in the evidence is whether the $75 paid to R. H. Parker for his conveyance on March 29, 1892, was of the separate estate of Susan Sullivan. On the last trial she testified on this subject: "I gave him (J. M. Sullivan) the money to redeem the land. I gave him 85 or 87 dollars, somewhere. The money that I gave him at that time I got from my father, Samuel Andrews. * * * I have got some of that original money now that I got from my father's estate. It is gold. I have got a right smart of it now. I came from Karnes county up here on the Clear Fork. My father did not live in Karnes county. He lived in De Witt county. There is where he died. My recollection is that it must have been something like three or four years before my husband's death that I gave him that 85 or 87 dollars. He came to town right straight the day I gave him the money. I guess he came. He said he did. That $85 was a part of the original money that I got from my father's estate." The plaintiffs however, introduced Susan Sullivan's testimony upon a former trial, which on the same subject is as follows: "The money I let Mr. Sullivan have was to redeem the property from taxes. I thought I told you when that was. I could not say positively when that was. I do not know anything about anybody going there and selling the land. I never saw anybody come in there and sell the land that I know of. Nobody ever told me that the sheriff sold the land. It never was that I know of. I have no recollection of it. I gave him that money, of course, to recover the land. I got that money from my father. It came from my father. I had stock and I had money. I always have money and I always did have it. I had stock and horses, of course, wasn't that something coming to me? I had the money and I always had it, I told you. That came off of the place there and I had money besides. Just so I had it, that is sufficient. It came from the increase of the stock my father gave me." There was also testimony by the children plaintiffs to the effect that, if their mother had on hand at the time of the sale of the land to Parker any original money received from her father, they had no knowledge of it, and that continuously for a number of years after their father's death their mother, Susan Sullivan, frequently referred to and acknowledged their interest in the land in controversy. This, however, was denied by Mrs. Sullivan. The foregoing presents all of the evidence deemed necessary to present, and substantially all relating to, the question under consideration, unless perhaps reference should be made to the fact that there was some testimony tending to show that J. M. Sullivan had become insolvent before the date of the Parker judgment.

Under this state of facts, as before stated, the majority think the judgment must be reversed; their view being presented in the language of Mr. Justice SPEER as follows:

"It is conceded, as indeed it must be under the authorities, that an error has been committed by the trial judge which ordinarily would require a reversal of the judgment. We refer to the failure of the trial judge to file his findings of fact after having been duly requested to do so by the appellants.

[2] "The fact that 'after ten days have elapsed from the adjournment of the court the power of the trial judge to file conclusions of fact and law ceases' (Wandry v. Williams [Sup.] 124 S. W. 85), and the attempt of the trial judge to file such conclusions after that time did not constitute that paper any part of the record on this appeal, and the failure of appellant to incorporate the same into the transcript is to be commended rather than criticised. It would have been stricken out on motion. See Bradford v. Knowles, 11 Tex. Civ. App. 572, 33 S. W. 149. We approve the rule as quoted from Mr. Justice Reese of the First district to the effect that the error in this case should work a reversal 'unless there is a statement of facts in the record from which it appears that the party appealing could not reasonably have been prejudiced by such failure and refusal.' There is a statement of facts in the record, but it is impossible to say that from the evidence the trial judge was forced to find in a way to support the judgment rendered by him in this case.

[3] "If the statement that the single issue presented was whether the land involved in controversy was at the date of the death of J. M. Sullivan the separate property of Susan Sullivan or the community property of J. M. Sullivan and his wife be accepted as correct, nevertheless, in determining whether or not the error is reversible and probably injuriously affected the appellant, it must be borne in mind that the burden of proof on the whole case was on appellees to prove that the property was the community property of J. M. Sullivan and Susan Sullivan. The rule that the burden of proof is on him who asserts the separate character of property to prove it can have no possible application in this case for the reason that appellants are not making any such assertion in their pleadings. They are merely denying the allegations of the plaintiffs, who themselves by their action have asserted the community character of the property and on whom, therefore, the burden rests to prove it. A recognition of this universal rule of evidence necessarily will result in a reversal of the case.

[4] "Let it be conceded that the conveyance of the property by Sarah E. Barfield and Mrs. Murray to J. M. Sullivan in 1882 constituted the same the community property of the Sullivans, yet on December 10, 1891, J. M. Sullivan by his deed conveyed the property to his wife, Susan Sullivan, which conveyance, as held by us on the former appeal of this case (Emery v. Barfield, 138 S. W.

419), 'as between husband and wife and necessarily their heirs,' had 'the effect of vesting a separate estate in the wife; and this, too, whether the instrument so limits the estate or not. The deed could have no other effect.' The fact that on the same day the land was levied on by an execution creditor of J. M. Sullivan, and that 'the evidence is silent as to whether this deed (from Sullivan to his wife) was executed before or after the Parker levy,' is all the more reason why the cause should be reversed. The burden of proof being on appellees to show the community character of the property, it necessarily devolved upon them to show, in order to overcome the conveyance from J. M. Sullivan to his wife, that at the time he executed it he had no title by reason of the prior levy of the Parker execution. Failing in this, the title passed by Sullivan's deed to his wife and the defendants would be entitled to a finding and judgment.

[5] "Again, the evidence shows that after the execution sale to Parker he reconveyed the property to Susan Sullivan, and it is admitted that there is a substantial controversy in the evidence as to whether the consideration for this reconveyance was paid from the separate estate of Susan Sullivan. Mrs. Sullivan testified that it was. She also testified in addition that it was not true that she and her husband, after he executed the deed to her, considered the land as community property, nor was it true that she and her children had treated and considered it as community property after J. M. Sullivan's death. This testimony, in connection with evidence tending to show that J. M. Sullivan caused the conveyance to be taken in his wife's name, even though the instrument did not convey to her separate use, tended to show that it was the intention of the parties that the property should be the separate property of Mrs. Sullivan, and this would be the tendency whether the consideration was paid from Mrs. Sullivan's separate property or from the community. Story v. Marshall, 24 Tex. 306, 76 Am. Dec. 106; Peters v. Clements, 46 Tex. 114; Tison v. Gass, 46 Tex. Civ. App. 163, 102 S. W. 751. Upon this last question also the burden of proof was upon appellees to show the community character of the property.

[6] "It avails appellees nothing if the deed from J. M. Sullivan to his wife was fraudulent as to the creditor Parker or any others for several reasons: First, they have not attacked this deed for fraud; second, they are not claiming under it; and, third, claiming as heirs necessarily they are in no better position than their ancestor, and clearly he could not assert the invalidity of the conveyance. It was binding on him and necessarily on his heirs.

[7] "So that it is impossible to say the failure of the trial court to make his findings of fact has not 'probably prevented the

appellant from making a proper presentation of the case to the appellate court.' Rule 62a (149 S. W. x). The majority, therefore, think the judgment should be reversed and the cause remanded for another trial."

From the view so presented the writer respectfully dissents. Several of the decisions indicate that in no case where there is a full statement of facts will the judgment be reversed merely because of the failure of the trial judge to file his conclusions of fact and law as requested. See Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 521, in which writ of error was refused (114 S. W. xiii); Haywood v. Scarborough, 102 S. W. 470; City Nat. Bank of F. W. v. Stout, 61 Tex. 567. In other cases the rule is not stated so broadly. In Huffman Imp. Co. v. Templeton, 14 S. W. 1015, there was a failure of the trial judge to file his conclusions of fact and law, demand therefor having been made in due time, and the court said: "It is not always that the failure of the judge to perform this duty will be ground for reversing the judgment, and we do not think it constitutes ground for reversal in this instance. There is a full statement of facts in the record and it does not appear that appellant has been injured or could be injured by reason of the nonperformance of such duty by the judge." To the same effect is the decision in the case of Crocker v. Crocker, 19 Tex. Civ. App. 296, 46 S. W. 870, and Umscheid v. Scholz, 84 Tex. 265, 16 S. W. 1065, and Sutherland v. Kirkland, 134 S. W. 851. A still later case, viz., Shepherd & Davenport v. McEvoy, 144 S. W. 285, is to the same effect, though perhaps apparently placing the burden upon the appellee to show that the failure of the trial judge to file his conclusions was without prejudice. Amended rule 62a by our Supreme Court, published since the opinion last cited (149 S. W. x) provides, among other things, that: "No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court," etc. It is also expressly declared by a statute having direct reference to Courts of Civil Appeals, that there shall be "no reversal on appeal or writ of error *, * * for want of form, providing sufficient matter or substance be contained in the record to enable the court to decide the cause upon its merits." It seems perfectly clear to the mind of the writer that the trend of all of these decisions and provisions, as well as of modern thought, is undoubtedly against reversals where it is plainly apparent that the error complained of could

have been of no material injury to the complaining party. The writer has been unable to see, after most careful consideration, in what respects the failure of the trial judge now complained of has in any way prevented appellants from a proper presentation of their case here or in any other way operated to their prejudice. As stated, we have before us a complete statement of facts. It is duly certified by the official reporter of the district to be "a full, true and correct transcript of all the testimony which was admitted in evidence by the court upon the trial of the case." It is so agreed to by counsel for both appellants and appellees and so duly approved by the trial court. And in appellants' brief relating to the merits, error is assigned to the judgment of the court as "wholly contrary to the law and the evidence and not supported by law or evidence" upon the grounds: First, that "Susan Sullivan acquired the land in controversy by inheritance from her father which constituted it her separate property, and that she acquired whatever interest J. M. Sullivan might have had in said lands by deed of said J. M. Sullivan dated December 10, 1891, * * * which constituted said lands the separate property of the said Susan Sullivan, and plaintiffs, being heirs of J. M. Sullivan, deceased, are not entitled to recover any of said lands by inheritance from said J. M. Sullivan." Second, "that the deed from R. H. Parker to defendant Susan Sullivan dated March 29, 1892, made and delivered by said Parker to said Susan Sullivan under the direction of her husband, J. M. Sullivan, now deceased, was a gift from said J. M. Sullivan to his wife, Susan Sullivan, of whatever interest J. M. Sullivan had in said lands and constituted said lands the separate property of the said Susan Sullivan as against plaintiffs who are heirs of the said J. M. Sullivan."

To these contentions it is in substance replied that neither the deed of December 10, 1891, nor of March 29, 1892, to Mrs. Sullivan recited that the land was conveyed to her separate use and that the evidence was at least of conflicting tendency on the issue of J. M. Sullivan's intent or purpose in making the one deed to Mrs. Sullivan and in directing (if he did so) the other to be made to her by Parker.

But the force of these conflicting contentions need not now be discussed. Whatever view may be taken of the evidence relating to the merits of the case, it is not perceived how appellants could more certainly invoke our revisory power. As it seems to the writer no issue of either law or fact is raised by the statement of facts in this case that could have been decided by the trial judge that may not be now passed upon under the statement of facts and assignments of error before us, and while it is doubtless true that conclusions filed without the ten days provided by the statute would not be considered,

possibly even in the absence of a motion to strike the same from the record, yet it seems significant that appellants have not exhibited in the transcript the conclusions of fact and law actually filed by the court so as to at least illustrate some possible way, if any, in which the judge's failure operates to their prejudice. As before stated, this suit was instituted in April, 1909, and has been twice prosecuted to a favorable conclusion in the trial court by appellees, and in the judgment of the writer without further discussion we ought now to disregard the mere technical error discussed and proceed to a determination of the merits. The conclusion of the majority, however, must prevail, and, accordingly, it is ordered that the judgment be reversed and the cause remanded for the error of the trial court in failing to file his conclusions of fact and law within the proper time.

Reversed and remanded.

CONNER, C. J., dissents.