**JOHNSON et al. v. FROST et al. (No. 9397.)**

(Court of Civil Appeals of Texas. Fort Worth. Dec. 18, 1920. Rehearing Denied Jan. 22, 1921.)

**1. Trespass to try title ⟨key⟩40(4)—Deed admissible in so far as controversy between plaintiffs and a defendant concerned.**

In trespass to try title, deed from a third person to a defendant, wherein was reserved a vendor's lien to secure the payment of three promissory notes, *held* admissible, in so far as the controversy between plaintiffs and such defendant was concerned.

**2. Trial ⟨key⟩255(4)—Admission of evidence competent against one defendant not erroneous in absence of request to limit it.**

Where evidence was admissible as between plaintiffs and a defendant, and no request was made to limit it to such extent, defendant's assignment to its admission must be overruled.

**3. Appeal and error ⟨key⟩1054(1)—Questions of admissibility of evidence, where trial before court, cannot present reversible error.**

Where the trial was before the court, questions involving the admissibility of evidence can hardly present reversible error.

**4. Appeal and error ⟨key⟩1054(1)—Testimony in nature of conclusion as to fact of settlement between parties held harmless.**

In trespass to try title tried to the court, admission of evidence of a plaintiff to the effect that he and a defendant had a final settlement with reference to transactions growing out of the purchase by plaintiff from defendant of a certain hardware business, etc., and testimony of a third person to the effect that a final settlement was made between such plaintiff and defendant, in view of the fact that both witnesses testified to the facts on which their statement as to settlement was based, and the fact that the cause was tried before the court, *held* not reversible error, despite the claim that the testimony constituted a conclusion of the witnesses.

**5. Evidence ⟨key⟩501(1)—Nonexpert testimony as to settlement between parties admissible.**

In trespass to try title, testimony of a witness that he and another, together with a plaintiff and a defendant, figured out the matters in controversy between such plaintiff and defendant, and that by their figures defendant owed plaintiff $700 on sale and purchase of a hardware company, *held* admissible as a nonexpert who states the facts on which he bases his opinion and thereby shows himself capable of having an opinion in many instances may state it.

**6. Appeal and error ⟨key⟩738—Assignment complaining of failure to exclude and of exclusion of testimony of two different parties multifarious.**

An assignment of error complaining of failure to exclude testimony of a plaintiff and of exclusion of testimony of a defendant is multifarious.

**7. Appeal and error ⟨key⟩1071(1)—Error in failing to file findings and conclusions cured by statement by attorneys approved by court.**

Any error on the part of the court by reason of failure to file findings of fact and conclusions of law is cured by the presence in the record of a full statement of the facts signed by the attorneys and approved by the court.

On Motion for Rehearing.

**8. Trial ⟨key⟩392(1)—Court not in error for failing to file findings and conclusions where action not invoked.**

Where request or motion for findings of fact was never called to the attention of the trial judge, and his action thereon was never properly invoked, he was not in error for failure to file findings of fact and conclusions of law.

Appeal from District Court, Taylor County; Harry Tom King, Judge.

Suit by Belton L. Frost and others against G. H. Johnson and others. From the judgment, defendants appeal. Affirmed.

Stinson, Chambers & Brooks, of Abilene, for appellants.

J. A. Templeton, of Fort Worth, for appellees.

BUCK, J. On April 20, 1915, B. L. Frost and wife and their son, Belton L. Frost, and wife, conveyed to G. H. Johnson some 13 sections of land, something less than 8 sections situated in Crane county and something over 5 sections situated in Upton county; the recited consideration being $36,403. Twenty-nine thousand four hundred and three dollars was recited to be "paid by the conveyance of other property," and the balance by the assumption of $7,000 incumbrance on the land due D. T. Bomar; $5,000 being secured by a mortgage lien on a portion of the property conveyed, and $2,000 being a vendor's lien note on a portion of said property. D. T. Bomar joined in this deed. There was conveyed in this instrument "also the leasehold estate and possessory right to all lands situated in what is known as the Frost Pasture, in Crane and Upton counties," described in a deed executed by L. W. Ainsworth, special master commissioner, to D. T. Bomar, April 19, 1915. The deed by the Frosts was a general warranty deed, and by Bomar a special warranty deed, specially reserving the lien held by Bomar to secure his two notes.

On July 14, 1915, G. H. Johnson conveyed to B. L. Frost certain property located at Roscoe, Nolan county, for a recited consideration of $22,500, of which $18,500 was stated to be cash, and the assumption of a $4,000 indebtedness to T. M. Dobbins, trustee, to secure J. C. Hobdy in the payment of five notes of $500 each; J. C. Wright owning the notes and claim at the time of the

conveyance by transfer. A deed of trust executed by Johnson and wife secured this deed. This conveyance was a general warranty deed except as to one-third interest in two of the lots conveyed, and as to that one-third interest the conveyance contained only a special warranty deed. Also by a general warranty deed of same date Johnson and wife joined by W. R. Costephens conveyed to B. L. Frost for a recited consideration of $1,500 two certain lots in the town of Roscoe. On the same date the same grantors made a deed to Belton L. Frost of another lot in Roscoe for a recited consideration of $8,000 paid, and the assumption by grantee of a $2,000 indebtedness due on said property. In these two last-mentioned conveyances G. H. Johnson and wife joined for the recited purpose of confirming to the grantees named all their title and interest in the land and for the purpose of releasing and discharging a vendor's lien held by them against the property. On August 28, 1915, G. H. Johnson executed a deed of trust to Ellis Douthitt, as trustee, on three tracts of land in Upton county containing 2,312 acres, theretofore conveyed to him by the Frosts; said deed of trust being given to secure a note of about $2,700 due the Roscoe State Bank, and a lien to secure which was reserved on one of the tracts conveyed by Johnson to the Frosts. To this deed of trust was attached an escrow agreement, signed by Johnson and B. L. Frost individually and by him as attorney in fact for Belton L. Frost, which provided that the deed of trust was not to be placed of record until September 4, 1915, and in the event the note to the Roscoe State Bank should be paid by that time said deed of trust was to be delivered to Johnson, and to become of no force and effect. This deed of trust appears to have been recorded in the office of the county clerk of Nolan county, no date of the record being mentioned. On August 9, 1916, T. M. Dobbins, trustee, and R. K. McAdams, president of the Roscoe State Bank, released to G. H. Johnson the deed of trust lien on a lot 60x100 feet in the town of Roscoe. This was the lot on which the building occupied by the Roscoe State Bank was located. On August 1, 1916, the two Frosts joined by the wife of Belton L. Frost executed a deed of trust to T. M. Dobbins, trustee, to secure the payment by G. H. Johnson of the indebtedness to the Roscoe State Bank, recited to be $2,700.

On one of the pieces of property conveyed by Johnson to the Frosts in their trade, John Helms of El Paso held three vendor's lien notes, executed by Johnson, each in the principal sum of $126.33, due January 1, 1916, 1917, and 1918, respectively. On November 6, 1916, B. L. Frost, as attorney in fact for Belton L. Frost, executed to Ed. S. Hughes, of Abilene, an assignment or transfer of the deed of trust theretofore executed by Johnson to Belton L. Frost to secure Frost in the payment of the $2,700 note to the Roscoe State Bank. The consideration mentioned was the payment by said Hughes of $1,000 on the note. This conveyance contains the following clause:

"And I hereby substitute the said Ed. S. Hughes to all rights, interest and title that he may have in and to the said deed of trust as fully and completely as if the said Ed. S. Hughes name were written in the said instrument, he the said Ed. S. Hughes to have the right to have the said deed of trust executed in my name or in his name as he may desire, and to direct the trustee or appoint a substitute trustee, if necessary, to have the said instrument executed to secure him, the said Ed. S. Hughes, in the payment of the said $1,000.00 note of even date herewith, made and executed by G. H. Johnson aforesaid."

Johnson joined in this instrument.

On December 5, 1917, B. L. Frost and Belton L. Frost filed their petition in the district court of Upton county against G. H. Johnson, residing in Nolan county, and against Ed. S. Hughes and Ed. S. Hughes Company, a corporation, of Taylor county, in form of trespass to try title to the land theretofore conveyed by plaintiffs to Johnson. By agreement the venue was changed from Upton to Callahan county, and by a further agreement from Callahan to Taylor county. On September 7, 1918, the plaintiffs filed their amended petition, in which, in addition to Johnson, Ed. S. Hughes, and Ed. S. Hughes Company, Henry James and Robin Jones appear as defendants. Henry James, it was alleged, ostensibly held the two notes, one for $5,000 secured by a deed of trust and the other for $2,000 secured by a vendor's lien, both payable to D. T. Bomar; but it was alleged that in reality the Ed. S. Hughes Company owned the notes. The petition recited the trade made by the Frosts and Johnson and the conveyance to Johnson by the Frosts of the land in Crane and Upton counties, and the conveyance by Johnson of certain tracts of land at Roscoe in Nolan county. It was recited that the conveyance of land in Crane and Upton counties was made subject to the deed of trust to secure the two notes in the aggregate of $7,000 held by D. T. Bomar, which indebtedness Johnson assumed; that Johnson conveyed to the Frosts certain tracts of land described as the first, second, and third tracts in the town of Roscoe, plaintiff agreeing to pay the sum of $4,000 indebtedness held against lot 1 and 10 feet off of the north side of lot 2 in block 15 of said town; that plaintiff further agreed to pay off an incumbrance of about $2,000 held by the Southland Life Insurance Company, which company held a lien on lot 16, block 2, of the original town of Roscoe, this being the

fourth tract conveyed to the Frosts by Johnson; but that he did not agree to pay the incumbrance held against said property by the Roscoe State Bank, Johnson agreeing to hold the Frosts harmless against all other incumbrances than those specially assumed by the Frosts. It was further alleged that lots Nos. 13 and 14 in block 2, conveyed by Johnson to the Frosts, was subject to a valid incumbrance of about $539.43, which was a valid first lien on said property and held by John Helms.

It was alleged that Johnson had failed to pay the balance of the incumbrance held by the Roscoe State Bank in the amount of $1,946.97, and the incumbrance held by John Helms on the other two lots and the balance of the incumbrance in excess of $4,000, which the plaintiffs assumed, held by J. L. Wright against lot 1 and 10 feet off of the north side of lot 2 block 15. It was alleged that on the 6th day of November, 1916, the indebtedness to the bank then being due and unpaid, the defendant Ed. S. Hughes, "as a means of securing from said bank for said Johnson an extension of time for the payment of a part of said indebtedness, advanced and paid to said bank on said indebtedness the sum of, to wit, one thousand dollars, with the understanding and agreement that said defendants should be subrogated to the rights of the beneficiaries in said deed of trust to the same extent as if originally named therein as such beneficiaries, and to this extent said deed of trust was assigned pro tanto to said Ed. S. Hughes and he thus became one of the beneficiaries named therein to the extent of the amounts so advanced and paid by him to said bank." It was alleged further that Robin Jones along with Ed. S. Hughes and Ed. S. Hughes Company was claiming some sort of title to the lands and liens thereon so conveyed to said Johnson by the plaintiffs, but that any claims held by them were subordinate and inferior to the plaintiffs' liens on said lands; that Johnson was notoriously insolvent, and that it had become necessary for plaintiffs' protection to enforce the lien retained by them on said Crane and Upton county lands and that same be sold for satisfaction of said indebtedness.

Ed. S. Hughes and Ed. S. Hughes Company filed a plea in abatement, alleging that all the right, title, and interest that the Frosts had had in and to the mortgage executed by G. H. Johnson in behalf of Belton L. Frost had been conveyed to Ed. S. Hughes, and that said Ed. S. Hughes now had the right and authority to appoint a substitute trustee in the place of Ellis Douthitt, if he should fail or refuse to perform the duties devolved upon him by reason of the deed of trust, and that the plaintiffs had no interest, claim, or title in and to said lands or deed of trust given thereon.

G. H. Johnson, by his first amended orig-inal answer, filed March 24, 1919, denied that plaintiffs had any interest in the deed of trust given by Johnson to the Frosts and assigned by the Frosts and Johnson to Ed. S. Hughes. He alleged that there had been a final accounting by him and the plaintiffs at the time of the execution of the deed of trust given by him to the Frosts to secure the payment of the note to the Roscoe State Bank, and that upon the transfer of said deed of trust to Hughes, and the payment on the bank's note of $1,000 received from Hughes, Johnson was not liable for any other amount except the balance due the bank, which he thereafter paid. Johnson further pleaded that if he should be mistaken as to the liability of himself as to the items alleged to be due by him and as to the lands in Crane and Upton counties, and if there was not final settlement between him and the plaintiffs, that plaintiffs had agreed to pay off certain indebtedness against the Harris-Johnson Hardware Company for which this defendant was liable and that they failed to do so and that defendant had been damaged thereby. Wherefore he prayed in reconvention for judgment against the plaintiffs in the sum of $5,000. Defendant Hughes answered, adopted the exceptions lodged against the plaintiffs' second amended petition by defendant Johnson, and further alleged that by the transfer and assignment to him of the deed of trust held by the Frosts on the Upton county lands, to secure the payment to the bank of the note held by it, that he became the owner of said deed of trust, and that plaintiffs had no interest in or claim to said land by reason of the deed of trust before mentioned.

The Ed. S. Hughes Company, after special exceptions, pleaded that it was the legal owner in fee of thirteen sections in Crane and Upton counties. It became the purchaser of said lands at a sheriff's sale in Ector county on November 7, 1916, and that said sale was made by virtue of an alias execution issued out of the district court of Nolan county in a certain suit in which the Continental State Bank of Sweetwater was the plaintiff and G. H. Johnson, E. L. Hopkins, and T. M. Dobbins were defendants, and that defendant paid value for the property and was an innocent purchaser of the same; that the Continental State Bank in the above styled and numbered cause had an abstract of judgment filed in both Crane and Upton counties on the 23d of October, 1914, and that said abstract of judgment was filed in Upton county on the 21st day of August, 1915, and in Crane county on the 7th day of August, 1915. At the time of the purchase of said land it had no knowledge or notice of any equitable liens against said land held or urged by plaintiffs. Said defendant further alleged that Johnson was indebted to defendant in the sum of $8,000 evidenced by

a certain promissory note dated February 1, 1916, and due on or before October 15, 1916, and that to secure the same Johnson had executed his deeds of trust upon the Upton and Crane counties lands, and that said liens so reserved constituted a prior lien to plaintiff's lien. Defendant further alleged that after taking said mortgage from Johnson, that it advanced to Johnson money to pay the interest on the Bomar notes, and that it had paid the interest to the state of Texas on said lands, that it had paid taxes on said land for the years 1915, 1916, 1917, and 1918, in the total sum of $1,590.70. Wherefore, defendant prayed that it have its foreclosure for the payment of the several items above mentioned.

Plaintiffs and the other parties litigant filed amended supplemental pleadings thereafter, but we believe a sufficient statement of the case has been made for the purpose of this opinion.

The cause was submitted to the court, without the intervention of a jury, and a judgment was rendered discharging the defendant Robin Jones on his disclaimer filed; sustaining defendant Henry James' plea of misjoinder of parties, and in favor of plaintiff Belton L. Frost against the defendant G. H. Johnson on the note due the Roscoe State Bank and paid by plaintiff, with interest and attorney's fees. It was further found that Ed. S. Hughes was entitled to judgment on his cross-action against defendant Johnson for the sum of $1,000, with interest and attorney's fees. The court found that a valid and subsisting lien evidenced by the deed of trust existed in favor of Belton L. Frost and Ed. S. Hughes, subject to certain outstanding liens against the Crane and Upton counties lands held by Henry James, and ordered a foreclosure of said liens, and that the land be sold and the proceeds applied first to the satisfaction of the judgment in favor of Ed. S. Hughes, and second in favor of Belton L. Frost. The court further found that the plaintiffs were not entitled to recover in this action the amount of taxes paid by them on the lands conveyed to them by the defendant Johnson; that Johnson was not entitled to judgment on his cross action against plaintiffs; that Ed. S. Hughes Company was entitled to a foreclosure of its liens on said lands, but that its liens were adjudged to be inferior and subordinate to those of plaintiffs and Ed. S. Hughes. Defendant Johnson, Ed. S. Hughes and Ed. S. Hughes Company have appealed.

[1-3] The first assignment of error complains of the admission by the court in evidence of a certain deed from John Helms to G. H. Johnson wherein was reserved a vendor's lien to secure the payment of three promissory notes. It is contended that inasmuch as Ed. S. Hughes and Ed. S. Hughes Company were the purchasers of the lands in controversy without notice of plaintiffs' alleged equitable liens, the burden was upon the plaintiffs to show that said defendants were not innocent purchasers of said lands or had notice of such equitable liens before the deed would be admissible. We think this was admissible, at any rate, in so far as the controversy between the plaintiffs and G. H. Johnson was concerned, and no request being made to the court to limit the evidence to the controversy between the plaintiffs and said Johnson and to exclude its application as to other controversies, appellants' assignment must be overruled. Sullivan v. Fant, 160 S. W. 612; Keowne v. Love, 65 Tex. 152. Moreover, the trial being before the court, questions involving the admissibility vel non of evidence can hardly present reversible error. The same ruling is made as to the second assignment, which complains of the admission of an escrow agreement between the Frosts and Johnson.

The third assignment is directed to the action of the court in excluding a letter written by B. L. Frost to Ed. S. Hughes Company. But a sufficient answer to this assignment is that the letter, to the exclusion of which the assignment is directed, is found on page 112 of the statement of facts, and there is no record of its having been excluded.

Nor do we think reversible error is shown in the fourth assignment, which complains of the exclusion of another letter written by B. L. Frost to Ed. S. Hughes Company, November 15, 1917. In this letter, specially addressed to Mr. Jones, Mr. Frost says:

"You remember about a year ago, I sold you Belton L. Frost's lien on his four sections given by G. H. Johnson, to save Belton harmless on a $2,700.00 (note) due by said Johnson to Roscoe State Bank, secured by lien on Bank Building. Belton took from Johnson for his land. The $1,000.00 draft given by you that day was paid to the bank and Mr. Johnson now refuses to turn over the $600.00 agreed upon by us on said day, saying that the lien of $600.00 did not belong to you on that date, because same had been barred by statute of limitation, prior to that time. But at that time you nor he knew it."

The last part of the letter, we think, is not material to the discussion of this assignment, and the only ground for the admission of the letter is the statement contained in the first sentence thereof that the writer had sold to Ed. S. Hughes Company the lien on the four sections belonging to Belton L. Frost and located in Upton county. We do not believe that the assignment made by B. L. Frost, attorney in fact for Belton L. Frost, to Ed. S. Hughes Company, is ambiguous, and that evidence aliunde the written transfer was admissible. At any rate, we do not believe that reversible error was shown

in the exclusion of this letter, inasmuch as the trial was before the court.

[4, 5] The sixth assignment complains of the admission of the evidence of B. L. Frost to the effect that he and Johnson had a final settlement with reference to transactions growing out of the purchase by Frost from Johnson of a certain hardware business and the purchase of stock in the corporation owning it. The seventh assignment complains of the admission of testimony of J. F. Allbright to the effect that a final settlement was made between B. L. Frost and defendant Johnson. Both of these witnesses testified to the facts upon which their statement, that a final settlement had been made, was based, and we do not think, under these circumstances and in view of the fact that the cause was tried before the court, reversible error was shown in admitting what the appellants claimed to be a conclusion of the witnesses as to whether a final settlement was made or not. Allbright testified that he and Mr. Costephens, together with Frost and Johnson, figured out the matters in controversy between Frost and Johnson, and that by their figures Johnson owed Frost a balance of $700 on the sale and purchase of the Harris-Johnson Hardware Company. We believe this evidence was admissible. American Construction Co. v. Caswell, 141 S. W. 1013, writ of error refused. . A non-expert witness who states the facts upon which he bases his opinion, and thereby shows himself capable of having an opinion on the subject, may, in many instances, be permitted to state his opinion. Ry. Co. v. Klaus, 64 Tex. 293; Ry. Co. v. John, 9 Tex. Civ. App. 342, 29 S. W. 558; 17 Cyc. p. 99; Porter v. Manuf. Co., 17 Conn. 249. We overrule the sixth and seventh assignments.

[6] The ninth assignment complains of the admission of a mass of testimony, covering several pages, of the witness B. L. Frost, concerning the trade made between him and his son on the one side and G. H. Johnson on the other. Much of this evidence, we think, is admissible, and, at any rate, we conclude that the admission of the whole constitutes immaterial error. We further conclude that the assignment is multifarious in that it complains of the failure to exclude the testimony of B. L. Frost and of the exclusion of the testimony of G. H. Johnson. The eleventh assignment complains of the exclusion of certain testimony by the defendant Johnson, and under the head of "statement" the appellants refer to the statement under the ninth assignment. The exclusion of this testimony is only as to the cross action of the defendant Johnson. The excluded testimony constitutes a rambling statement of the entire transactions between the Frosts and Johnson, and their mutual obligations arising out of the exchange of lands, the debts which Johnson claimed the Frosts as-

sumed, etc. Much of this testimony is evidently hearsay, some of it doubtless conclusions of the witness, and we find that the assignment does not specifically point out any legal reason why its exclusion constitutes reversible error.

[7] The twelfth assignment is directed to the failure of the court to file his findings of fact and conclusions of law. Any error on the part of the court by reason of such failure is cured by the presence in the record of a full statement of the facts signed by the attorneys and approved by the court. I. & G. N. Ry. Co. v. Diaz, 156 S. W. 907; Harlan v. Merc. Co., 214 S. W. 649; Barfield v. Emery, 107 Tex. 306, 177 S. W. 952.

Appellees have several cross-assignments, and we have examined the same and conclude that they should be overruled. If we were to sustain any of these cross-assignments, it would require a reversal of the judgment, which we are persuaded appellees do not desire. However, we do not think that any of them should be sustained.

All assignments are overruled, and the judgment is affirmed.

On Motion for Rehearing.

Appellants and appellees have both filed motions for rehearing. One of the grounds urged in appellees' motion is our failure to sustain the twelfth assignment of error, complaining that the trial court erred in failing to file findings of fact and conclusions of law. The qualification by the trial judge to the bill of exceptions referring to this failure is as follows: .

"This bill of exception examined, found correct, signed, approved and ordered filed as a part of the record in this case with this qualification, at the time the court rendered judgment, neither party requested findings to be filed. At some other time, the exact date of which the court cannot remember, an attorney for defendant 'phoned me at my office that he wanted a special finding of facts on a couple of points and would made a request for same. At no time thereafter was such request if any brought to my attention and action invoked on same, and to this good day I have never seen the like request, if any.

"Harry Tom King, Judge Presiding."

Appellants cite the cases of Poulter v. Smith, 149 S. W. 279, by this court; Emery v. Barfield, 156 S. W. 311, by this court, Judge Conner, who wrote the opinion, dissenting; Peers v. Williams, 174 S. W. 865, by this court; Bloch v. Bloch, 190 S. W. 528; Guadalupe County v. Poth, 153 S. W. 920; Kyle v. Blanchette, 158 S. W. 796; Lester v. Oldham, 208 S. W. 575—in support of their contention that, even though a statement of facts is in the record, where the evidence is conflicting upon material issues the failure of the trial court to file findings of fact upon request is reversible error. In

Barfield v. Emery, 107 Tex. 306, 177 S. W. 952, where a writ of error was applied for in the case of Emery v. Barfield, 156 S. W. 311, our Supreme Court, in an opinion by Chief Justice Phillips, reversed the judgment of the majority of the Court of Civil Appeals and sustained the dissent of Chief Justice Conner, and remanded the cause to the Court of Civil Appeals for further consideration. In the instant case, the statement of facts consists of some 185 pages, agreed to by attorneys in the case as "a full, true, and correct statement of the evidence admitted by the court, upon the trial of the above entitled and numbered cause," and is duly approved by the trial judge. While it is true that the evidence in some respects is conflicting, yet, from a careful study of the same, we have found no difficulty in determining what the trial judge's findings of fact were as to the facts in the case, and believe that those findings were amply sustained by the evidence. Even if the request for the findings of fact had been brought to the attention of the court, which the trial judge denied, we conclude that no injury has resulted to the appellants by the failure to file such findings. In this respect the record is different from that disclosed in the case of Peers v. Williams, supra.

[8] However, it appears from the qualification by the trial judge of appellants' bill of exception that the request or motion for the findings of fact was never called to the attention of the trial judge, and that his action thereon was never properly invoked. Hence we conclude that there was no error in our original opinion in overruling this assignment.

Both the appellants' and the appellees' motions for rehearing are overruled.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes