No. 47.—John J. Mitchell, plaintiff in error, *vs.* John Treanor, defendant in error.

[1.] Cohabitation is presumptive evidence of the wife's authority to contract; and it is for the husband to rebut the presumption by showing that the goods were supplied under such circumstances that he is not bound to pay for them. But where the husband and wife are living apart, the *onus* lies the other way; and it is for the tradesman to show that the separation has taken place under such circumstances as will render the husband liable.

[2.] *Subsequent* provision made by the Court for *past* alimony will not bar the right of recovery for goods previously furnished.

[3.] If the tradesman supplies the goods to the wife, and gives the credit to her, the husband is not liable.

[4.] Whether the credit was given to the wife or the husband, is a question of fact for the Jury.

Assumpsit, &c. in Baldwin Superior Court. Tried before Judge Johnson, February Term, 1852.

This was a suit by John Treanor against John J. Mitchell, upon an account for merchandize. The following statement of facts was agreed upon by the parties in the Court below:

" The goods charged in the account of plaintiff, were purchased by Mrs. Catharine Mitchell, the wife of defendant, in the year 1849, commencing on the 3d February and ending on the 27th December, 1849—she, during the whole time, living separate and apart from her husband; having been constrained by family disagreements, and the unkindness of her husband, to leave the house of her husband, and live apart from him, with her infant child, seven years of age. During the separation aforesaid, she purchased and received the articles in the account sued; and they were charged by the plaintiff on his original book of entries to her, and not to Dr. Mitchell. Dr. Mitchell was then, and now is, possessed of some thirteen negro slaves and other property. The articles purchased were suitable to his pecuniary circumstances. At the time of the separation, no provision was made for the wife and child. Subse-

quent to the making of the account, to wit, in February, 1850, a partial divorce was granted to Mrs. Mitchell; and the Jury allowed for past maintainance in their verdict granting the divorce. Dr. Mitchell gave an order to a third person, addressed to plaintiff, during the year 1849, desiring him to furnish the bearer with six yards of homespun; and which order plaintiff refused to comply with, saying Dr. Mitchell had no account there."

Upon this agreed statement of facts, the Court charged the Jury: " That Mrs. Mitchell having been constrained by the unkind treatment of Dr. Mitchell, to leave his house and live separate from him, without any provision having been made for her support, carried with her a letter of credit for necessaries suitable to the conditon of the husband; that the subsequent provision for alimony did not affect the liability of the husband to the merchant, unless it be shown that the alimony had been paid, and applied to the payment of such account for necessaries. The Court does not consider the charge of the goods to Mrs. Mitchell, as affecting the right of the plaintiff to recover from the husband."

This charge is assigned as error.

W. S. ROCKWELL, for plaintiff in error.

I. L. HARRIS, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] This was an action of assumpsit, brought by John Treanor against John J. Mitchell, to recover the value of a bill of goods furnished by the plaintiff to the wife of the defendant. The facts, as agreed upon by the parties, are these: The merchandize charged in the account was purchased by Mrs. Mitchell in the year 1849, commencing on the 3d of February and ending on the 27th of December of that year; she, during the whole of that time, living separate from her husband; having been constrained, by family disagreements and unkindness, to leave

his house and live apart from him, with her infant child, seven years old. The articles were charged in the original book of entries to the wife, and not to the husband. It appeared also, that during the year 1849, Dr. Mitchell gave an order to some third person, addressed to Treanor, desiring him to supply the bearer with six yards of homespun, which the plaintiff refused to purchase; saying, that Mitchell, the defendant, had no account with him.

Dr. Mitchell was then, and is now, in possession of some thirteen slaves and other property; and the things bought were suitable to his circumstances and condition in life. At the time of the separation, no provision was made for the wife. Subsequently, to wit, in February, 1850, a partial divorce was granted to her; and by the verdict of the Jury, an allowance for past maintenance was decreed by the Jury.

Upon this testimony, is the husband liable for the debt?

[1.] As cohabitation is presumptive evidence of the wife's authority to contract, it is for the husband to rebut that presumption, by showing that the goods were supplied under such circumstances, that he is not bound to pay for them; but where the husband and wife are living apart, the *onus* lies the other way, and it is for the tradesman to show that the separation has taken place under such circumstances as will render the husband liable. 2 *Bright on Husband and Wife*, 11, 12.

We think the proof that the wife was *constrained* to leave the house of the husband, on account of mistreatment, is sufficient to make him chargeable for her maintenance. She was ejected from his domicil with a letter of credit for necessaries.

[2.] Neither is he relieved from liability by the *subsequent* provision made by the Court and Jury, for *past* alimony, the goods having been previously delivered.

[3.] But did Mr. Treanor deal with Mrs. Mitchell on the credit of the defendant, her husband? If he did not, then the husband is not answerable.

. Chancellor *Kent* lays down the rule explicitly, that if the tradesman furnishes the goods to the wife, and gives the credit to her, the husband is not liable, though she was at the time liv-

ing with him. (2 *Com.* 146.) *A fortiori*, is he not liable if they were living apart!

Mr. *Bright* says the husband has been held not to be liable where the dealing with the wife took place on the credit of another; and *where the tradesman made out the invoice and accounts to the wife*, and drew bills of exchange for her to accept. *Bright on Husband and Wife*, 18.

*Clancey* maintains the same doctrine. *Treatise on Hus. and Wife*, 25, 26.

The principle thus stated is fully sustained by all the reported cases. See *Holt vs. Brien*, 4 B. & Ald. 252. *Montague vs. Benedict*, 3 B. & C. 631. *S. C. Montague vs. Barron*, 5 Dowl. & Ry. 532. *Harvey vs. Norton*, 4 Jur. 42. *Freestone vs. Butcher*, 9 Car. & P. 647. *Metcalfe vs. Shaw*, 3 Camp. 22. *Bentley vs. Griffin*, 5 *Taunton's Rep.* 356.

In the case in 3d *Campbell*, Lord *Ellenborough* declared that it was a *plain ground*, that if the goods were not supplied on the credit of the husband, that he was not liable.

On a writ of error, to reverse a judgment of the King's Bench, it was decided in the Exchequer Chamber, that assumpsit against the husband for money lent to the wife, at the request of the wife, was not maintainable; because, it appeared on the record, that the contract was made with the wife and the credit given to her, and not to the husband. *Stone vs. Mac-Nair, in error*, 7 *Taunton*, 432. 4 *Price*, 48.

Being satisfied then, that the general liability of the husband is repelled by the proof which goes to show that the credit was given to the wife, and that the plaintiff looked to her alone for payment, the cause must be sent down for another trial.

[4.] Whether a tradesman who furnishes goods to a wife, gives credit to her or her husband, is a question of fact, to be determined by the Jury.