## TUMLIN *v.* THE BASS FURNACE COMPANY.

1. Where a bill of exceptions assigning as error the granting of a non-suit, and setting out the evidence introduced upon the trial (there being no brief of evidence approved and filed as part of the record), has been signed and certified, and counsel for defendant in error afterwards presents to the judge a petition alleging that certain oral evidence, specifying it, was omitted from the bill of exceptions, which petition the judge certifies to be true, and directs the clerk to send up such oral evidence as a part of the record, but which the clerk fails to do for the reason that there is nothing of file in his office which he can certify and send up in obedience to this order, the oral evidence set out in such petition is no part of the record, and cannot be considered by the Supreme Court.

2. It appearing, upon the trial of an action on an open account for goods sold and delivered, that there was a written contract between the parties as to what was to be the quantity, quality and price of the goods, it was competent for the plaintiff to amend his declaration by setting forth the existence and contents of the written contract, not for the purpose of counting upon it as a distinct cause of action, but to disclose and allege the pertinent facts and circumstances under which the sale and delivery were made.

3. Upon the trial of such case it was error, with or without the amendment, to reject the written contract when offered in evidence by the plaintiff for the purpose of showing that his proposed oral evidence as to the quality of the goods delivered was in conformity to the description of them contained in the contract.

March 19, 1894. Argued at the last term.

Complaint on account. Before Judge TURNBULL. City court of Floyd county. December term, 1892.

H. M. WRIGHT and NAT HARRIS, for plaintiff.

R. T. FOUCHÉ, for defendant.

LUMPKIN, Justice.

1. The bill of exceptions, which was duly signed and certified, assigned as error the granting of a nonsuit, and set out what purported to be the evidence adduced upon the trial. There was no brief of evidence approved and filed by the presiding judge and thus made a part of the record. After the bill of exceptions was served upon counsel for the defendant in error, he presented to the judge a petition alleging that the plaintiff, while testifying as a witness at the trial, had made a certain admission (specifying it), which admission had been omitted from the report of the evidence as incorporated in the bill of exceptions; and counsel prayed the granting of an order by the judge directing the clerk to certify and send up, " as a part of the record, the evidence contained in this petition." Attached to the petition was a certificate by the judge in the following words : " I certify that the evidence, as set forth in the foregoing petition, was introduced as stated ; and the clerk is hereby ordered and directed to certify and send up the same as a part of the record of the case." The clerk, of course, failed to comply with this order, for the simple reason that there was nothing of file in his office which he could certify and send up in obedience thereto. Consequently the oral evidence set out in the petition is no part of the record, and cannot be considered by this court.

Section 5 of the Supreme Court practice act of 1889 provides for bringing to this court, at the instance of the defendant in error, certified copies of papers constituting a part of the record, and not specified by the plaintiff in error. When it says that if the defendant

in error " shall desire more of the evidence or other
parts of the record, or all of the evidence or all of the
record, sent up," it refers to evidence incorporated in a
brief which has been approved by the judge and filed
with the clerk, and thus made a part of the record.
The effort in the present case to get before this court
the alleged admission of the plaintiff in the court be-
low was, in effect, neither more nor less than an attempt
by the judge, at the instance of counsel, to amend and
alter the bill of exceptions, after he had certified it and
it had passed finally beyond his control. Whatever
may be authorized by the words, " and it is also expressly
enacted that the bill of exceptions in any case, or the
certificate thereto, may be amended at any time before
the final argument thereon in the Supreme Court, so as
to make such bill of exceptions or certificate conform
to the truth of the case and the forms of law,"—used
in the 3d section of the act of December 18th, 1893, to
regulate the practice before the Supreme Court, etc.,
(Acts of 1893, p. 52), there was certainly no law in
March, 1893, the time when the petition above referred
to was presented, conferring upon the judge any power
to amend or in any manner change or alter a bill of
exceptions after it had once passed out of his hands.

2. This was an action upon an open account for char-
coal sold and delivered by the plaintiff to the defendant.
It appeared from the plaintiff's testimony, while he was
upon the stand as a witness, that one Stillwell had made
a written contract with the defendant to furnish to it a
considerable quantity of charcoal; that plaintiff had
succeeded Stillwell in that contract, and had shipped
under it all of the charcoal for which he was suing.
That contract was in the following words:

" This agreement, made this 15th day of May, 1891,
between Bass Furnace Company, of one part, and John
E. Stillwell, of the other part: witnesseth, that said Still-

well hereby agrees to furnish everything, and do every-
thing necessary in the premises, and make and deliver
to said company at its Rock Run furnace, not less than
two hundred thousand bushels of first-class charcoal be-
tween this date and June 1st, 1892. The coal is to be
made from the timber on land owned by Minhinnett,
and the price of the coal, delivered at the furnace, is to
be .06¼ cts. per bushel of 2,750 cubic inches, for good
coal without brands, as received by the estimates as to
value of bushels of each load made by the company's
stock receiver at the time the coal is dropped, and his
decision as to that is to be final on both parties hereto.
The payments by said company for the coal made under
this contract shall be in cash, and such merchandise as
said Stillwell may purchase of Bass Furnace Company
at regular prices; and times of payments of balances in
favor of Stillwell shall not be postponed more than
twenty days from the close of the month in which this
credit occurs. It is understood and agreed under this
contract, that the charcoal is to be well manufactured
and delivered in good condition, free from dirt, braise
and brands.

"Witness our hands and seals this day and date
above written.          " Bass Furnace Company,
          (Signed)          By J. M. Garvin, Supt.
          " John E. Stillwell."

The plaintiff was asked by his counsel what was the
quality of a designated car-load of coal he had shipped.
Upon objection, the court ruled that, inasmuch as there
was a written contract between the parties, the witness
would not be permitted to answer the question. The
plaintiff then offered in evidence the written contract
itself, but it was rejected by the court; and thereupon,
the plaintiff offered to amend his declaration by setting
forth the contract and making it a part of the same,
and by alleging that the words " value of bushels," oc-
curring in the contract, were ambiguous, and meant only
that the *quantity*, and not the *quality*, of coal should be
passed on by the company's stock receiver; and further,
that by mistake the stock receiver " charged the plain-

tiff with $300.00 in sorry coal, when there was no sorry coal in any shipment."

The action not having been brought upon the written contract itself, or for a breach of the same, we do not think the amendment was allowable so far as the allegation relating to the alleged ambiguity in the contract, and those allegations immediately following it, are concerned. But we see no reason why it was not permissible to amend the declaration by setting forth the existence and contents of the written contract. This could not be done for the purpose of counting upon it as a distinct cause of action, but might be done for the purpose of disclosing and alleging the pertinent facts and circumstances under which the sale and delivery were made. In this view, the amendment would not vary or change the original cause of action, or set out a new and distinct cause of action, but would simply enable the plaintiff to more clearly allege the particulars as to the quantity, quality and price of coal, the delivery of which he claimed in his original action to have made, and for the price of which the action was brought.

In *Kennedy & Morrow* v. *Vandiver*, 55 *Ga.* 171, it was decided that where a suit was brought upon an open account for coal, and a special contract in writing, embracing the same subject-matter as the account, was tendered in evidence and rejected, the plaintiff should have been allowed to amend his declaration by setting out the special contract. See also *Fla. &c. R. R. Co.* v. *Varnedoe*, 81 *Ga.* 175. There are other decisions of this court to the same effect, but as those just mentioned cover exactly the point in issue, further citations are unnecessary.

3. Those cases also bear somewhat upon the question of the admissibility of the written contract in evidence, which will now be briefly discussed; for if the court had allowed the amendment, as should have been done, the

contract would have been admissible beyond question. But the court ought to have allowed the written contract to be introduced in evidence, even after rejecting the amendment. In *Hancock* v. *Ross*, 18 *Ga.* 364, it was held that where a special agreement has been fully performed on one side, and nothing is to be done on the other except to make a money payment, such payment may be enforced by *indebitatus assumpsit;* not, " that the plaintiff can ground his claim, when his action is in general *assumpsit*, upon the special agreement, but that such agreement may be taken as *evidence* of value." See, also, *Johnson* v. *Quin*, 52 *Ga.* 485 ; Friermuth *v.* Friermuth, 46 Cal. 42; Notes to Cutter *v.* Powell, 2 Smith's Leading Cases, 9th Am. ed. * p. 1220; 2 Greenleaf's Ev. 15th ed. §104, and cases there cited.

Again, in *Schmidt* v. *Wambacker & Weil*, 62 *Ga.* 321, it was held that, under section 3393 of the code, suit may be brought and recovery had on an open account for merchandise furnished, although there was a special contract in writing to pay for all or a part of the same. In that case, there was no objection to the introduction of the written contract, but its admissibility was clearly recognized. In this connection, see also *Roberts & Hughey* v. *Harris*, 32 *Ga.* 542. *Dobbins* v. *The Pyrolusite Manganese Company*, 75 *Ga.* 450, a case somewhat similar to *Hancock* v. *Ross*, *supra*, cites that case approvingly, and rules that the written contract then in question was proper evidence of the debt. And see *Hill* v. *Balkcom*, 79 *Ga.* 444.

The case of *Blue* v. *Ford*, 12 *Ga.* 45, is distinguishable from those above cited, and others to the same effect, because, in that case, there was not a full performance by the plaintiff of the written contract, and accordingly this court sustained the court below in holding that "where there is a contract, either verbal or written, and where the contract has been broken by

either of the parties or by providential causes, neither of the parties can treat the contract as null, and sue on a *quantum meruit*, but must sue on the contract, and set out in the pleadings the facts as they exist."

We think the court, in the present case, ought to have allowed the written contract, under which the coal was alleged to have been furnished, to have gone in evidence to show, among other things, the kind and quality of the coal to be delivered; and in the same connection, the oral evidence of the plaintiff, tending to show that the coal actually delivered was of such quality as that stipulated for in the contract, should also have been received.        *Judgment reversed.*