### WHITNEY HARDWARE CO. v. McMAHAN et al. (No. 7769.)

(Court of Civil Appeals of Texas. Dallas. March 31, 1917. Rehearing Denied June 18, 1921.)

**1. Husband and wife ⚍146 — Husband contracting for his wife with her tenant for repairs not liable to tenant for negligent performance.**

A husband merely contracting as agent of his wife, the landlord, with her tenant for repair of her building, neither concealing his agency nor agreeing to be bound individually, is not liable to the tenant for injury to his goods through negligent performance of the work.

**2. Husband and wife ⚍213—Wife liable for negligent performance of her contract with her tenant for repairs.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624, giving to a wife the sole management and control of her separate property, including rents therefrom, except that the husband must join in disposition or incumbrance of real estate, she is liable for negligent performance through her agents of her contract with her tenant for repairs, whereby his goods are injured.

**3. Husband and wife ⚍213—Husband must be joined in action against wife for her negligent performance of contract.**

The husband must be joined in action against a married woman for negligent performance of her contract with the tenant of her separate property for repairs thereof, whereby the tenant's goods were injured.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by the Whitney Hardware Company against E. K. McMahan and others. From judgment of dismissal, plaintiff appeals. Reversed and remanded.

For Supreme Court's answer to certified questions, see 231 S. W. 694.

Wear & Frazier, of Hillsboro, for appellant.

R. M. Vaughan, of Hillsboro, for appellees.

RAINEY, C. J. Appellant instituted this suit to recover from appellees the sum of $2,500 for damages to its stock of merchandise in repairing the roof of a building, the separate property of Mrs. McMahan, and occupied by appellant as a tenant.

The appellees interposed a general demurrer, which was sustained by the court, and appellant refusing to amend its petition judgment was entered dismissing the case, from which judgment this appeal is taken.

The petition of appellant, omitting formal parts and the exhibit, is as follows:

"Now comes the plaintiff, Whitney Hardware Company, a corporation, leave of the court first having been had and obtained, and makes and files this, its second amended original petition in lieu of all other pleadings heretofore filed by it, and for such amendment pleads as follows:

"'That it complains of E. K. McMahan and wife, Effie McMahan, who reside in Matagorda county, Tex., and Waul McMahan, who resides in Hill county, Tex., defendants, and for cause of action represents the following facts: That the plaintiff is a corporation organized and existing under and by virtue of the laws of the state of Texas, and as such, is engaged in the hardware business in the town of Whitney, Hill county, Tex., where it has and maintains its principal office and place of business; that it has been engaged in such business since the time and long before the happening of the matters and things hereinafter complained of; that during the year 1915 it occupied a building in the town of Whitney, which belonged to and was the separate property and estate of Mrs. Effie McMahan; that it carried its main stock of hardware, including shelf hardware and generally such things as a first class hardware store usually keeps in stock for sale to the general public; that during the time it occupied said building it rented the same from the said Mrs. Effie McMahan, her husband, and the defendant Waul McMahan, agreeing to pay them a rental of $100 per month therefor; that said building became in very bad state of repair and it became impractical for plaintiff to continue as a tenant in said building with its said stock of hardware which aggregated the sum of $15,000 in value, unless it could procure certain repairs to said building.

"'That it communicated these facts to the defendants and each of them, as a result of which the defendants each agreed, acting for themselves individually and as the agent of one another, to repair said building and to generally put it in a good tenantable state; that in consideration for said agreement on the part of said defendants to so repair said building and relying and acting thereon the plaintiff did continue to occupy same believing that it would be repaired in time as the defendants had promised.

"'Plaintiff further represents that the defendants did make one or more ineffectual attempts to repair said building and some time about in July, 1915, or the first of August of that year, with the knowledge and consent and acquiescence of each of the other defendants hereinabove named and as their duly constituted agent, the defendant Waul McMahan did begin and undertake to have said building repaired; that plaintiff was not in any wise acquainted with the undertaking of said Waul McMahan and the defendants at the time; neither were they acquainted with the full purpose of what they intended to do. Plaintiff does represent, however, that the defendants negligently failed to properly repair said building and plaintiff further states that the defendants, instead of repairing said building, greatly impaired the roof in that they tore off a part of the covering and roof and the flashing and caused the same to become more open and in a greater state of bad repair than it formerly was. All of which was unknown to the plaintiff at the time. As plaintiff is informed and believes and therefore charges the fact to be, the defendants tore off a portion of said roof without having on hand sufficient material of the right kind and character to put the same back either in a good state of repair or in as good condition as it was when they attempted to repair the same; that while it was in such condition there came a very heavy rain, which poured through the roof, the cracks and the holes and wet the stock of goods, which plaintiff at that time had in said building and greatly damaged the salability of said goods and generally rendered them in an unsalable condition, detracting from their market value at least 50 per cent. and greatly damaging all of the fixtures which plaintiff had in said building; that the plaintiff's said stock of goods and fixtures, as a result of the misconduct and negligence on the part of the defendants hereinabove complained of and their failure to repair the roof in the manner agreed by them and on account of the great rain which came at the time, as above alleged, its said stock of goods was damaged at least in the sum of $2,500.

"'In this connection, plaintiff further shows to the court that it is impossible for it to include each and every item of its said stock of goods which were so damaged and injured as aforesaid, but that it has attached to this petition "Exhibit A," here referred to and made a part hereof, which is a partial list of its goods, fixtures, wares, and merchandise so damaged at such time and place by the negligence and failure on the part of the defendants as above alleged, which said list of items was made by the plaintiff, its agents and employés, at the time and just after the damage and injury herein complained of; that each and every item of which it made a list at said time has noted the amount of injury received and damage done to said respective items by the rain mentioned and on account of the negligence of the defendants and their failure to comply with their agreement to repair said building; that a more detailed statement cannot be made by plaintiff, neither can more detailed information be given with respect to the various items of goods damaged nor the amount or character of the damage suffered by each respective item than is here shown.

"'Plaintiff further shows, however, that the defendants' failure to comply with their agreement to repair the roof of said building and their negligence in making ineffectual and bad repairs was the direct and proximate cause of their injury and that said agreement was made by each and all of the defendants, and that the agreement and undertaking of said E. K. McMahan and the said Waul McMahan was ratified by the said Mrs. Effie McMahan and was agreed to by her. In this connection plaintiff further shows that the defendant Mrs. Effie McMahan has intrusted the management of all of her business to her husband, E. K. McMahan, and her brother-in-law, Waul McMahan, including their authority to repair, at her expense and for her, the building in question.

"'Whereupon, premises considered, defendants having each answered herein, plaintiff prays that upon final trial it have judgment

against them collectively and severally for the sum of $2,500, and for any other relief, general and special, in law or in equity, to which it may show itself entitled.' "

[1] In our opinion the petition states a good cause of action against Effie McMahan and husband, E. K. McMahan, but fails to show any liability on the part of Waul McMahan, who is alleged to be agent in the transaction. There is nothing showing that he owned any interest in the building or that he was benefited in what was done, nor did he agree to be bound individually. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050. He did not conceal his agency or do anything that would make him primarily liable in the transaction.

[2] The question of liability of the wife is raised by appellee. By the act of the Legislature of 1913, amending articles 4621–4624 (Vernon's Sayles') R. S. 1911, a change was made as to the control and management of the wife's separate property, in that the wife is given "the sole management, control and disposition of her separate property, both real and personal," except in the disposition or incumbrance of real estate, in which event the husband must join. Said act, 1913, now article 4622, Vernon's Sayles' R. S. 1914, further provides that—

"The personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stocks owned by her shall be under the control, management and disposition of the wife alone."

By these articles the rents from the separate estate of the wife and other income became subject to her management and control. Before the passage of said act, 1913, it was the community property of herself and husband and was under his control and management. Now does the act of 1913 make her right to contract broader than it was under the old law? We think so, at least, as to the subject of her personal earnings, rents of her real estate, interest on notes and bonds belonging to her, and dividends on stock owned by her. This view is supported, we think, by article 4624, R. S., as amended by act 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4624), which reads:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children, provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

The caption of the act of 1913, concerning marital rights of the husband and wife, states it is for the purpose of "defining separate and community property of the husband and wife, conferring upon the wife the power to make contracts, authorizing suits on such contracts," etc., and in the later clause, section 2, of the act, it states:

"The fact that the present law denies to married women the right to manage their separate property, and to make contracts is unjust to a large number of citizens of this state creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and it is hereby suspended."

From these and the body of the act giving her the sole management, control, and disposition of her separate property, both real and personal, except with the disposition and incumbrance of real estate, etc., and divesting the husband of the control of her separate property, as formerly existed, it is evident that the Legislature intended to empower her to contract with reference to rents, etc., from her separate property and making it subject to debts and liabilities incurred by her.

[3] The allegations show that injury to the property of plaintiff occurred in attempting to improve and repair her separate property by her husband and Waul McMahan, who were acting as her agents, which was agreed to and ratified by her. It was necessary to join her husband in a suit against her, and as to them it was error to sustain a general demurrer to the petition.

The judgment is reversed, and the cause remanded.

On Motion for Rehearing.

TALBOT, J. On April 13, 1917, the appellees filed a motion for a rehearing in this case. Pending this motion we certified the controlling question involved to the Supreme Court of Texas for adjudication. On May 25, 1921, that question was answered by the Supreme Court in accord with the decision of this court.

The motion for rehearing is therefore overruled.