## COLONNA v. KRUGER. (No. 10043.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 28, 1922. Rehearing Denied Dec. 2, 1922.)

**1. Appeal and error ☞547(2)—Failure to file written findings of fact held not error.**

Error cannot be pronounced on the court's failure to file written findings of fact and conclusions of law where the motion therefor does not appear on the motion docket, and there is no showing that it was otherwise brought to the court's attention, or where there is no formal bill of exceptions to such failure in the record.

**2. Appeal and error ☞1036(3)—Failure to join wife with husband in suit for goods furnished her held not prejudicial.**

In view of act of 1913 amending Rev. St. 1911, arts. 4621, 4624 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4624), providing that "neither the separate property of the husband nor * * * shall be subject to the payment of debts contracted by the wife except those for necessaries, * * *" failure to join the wife in a suit against the husband for goods furnished her is not prejudicial to him, notwithstanding Rev. St. 1911, art. 1840, providing husband and wife shall be jointly sued for all debts contracted by the wife for necessaries or for her separate estate.

**3. Husband and wife ☞213 — Wife not necessary party in suit against husband where no prayer to subject her separate property.**

Notwithstanding Rev. St. 1911, art. 1840, as to joint suit against husband and wife, in suit for debt for wife's necessaries against husband, the wife is neither a necessary or proper party defendant when there is no prayer to subject her separate property to payment of the debt.

**4. Husband and wife ☞23½—Husband held not to have impliedly ratified purchase of jewelry by wife as agent.**

Evidence that a husband hypothecated a diamond lavalliere and bar pin for money borrowed by his wife *held* insufficient to constitute a ratification of her purchasing same as his agent, in view of undisputed testimony that she told him and he believed they were paid for at the time out of her own funds.

**5. Husband and wife ☞19(14)—Facts held insufficient to show that diamond lavalliere and bar pin were "necessaries."**

Evidence that defendant lived in a rented flat and had only about $8,000 in a stock of merchandise *held* insufficient to support a finding that a diamond lavalliere and bar pin worth approximately $3,000 were necessaries, though he and his wife moved in good society, had an automobile, and occupied one of the popular flats of the city (citing Words and Phrases, First Series, "Necessaries").

**6. Husband and wife ☞19(7)—Husband not liable for necessaries bought on wife's credit.**

If one sells necessaries to a married woman and extends credit therefor to her personally

or upon the credit of her individual estate, her husband is not liable therefor.

**7. Husband and wife** ☜**232(3)—Evidence held insufficient to support finding that jewelry was not sold on wife's personal credit.**

Evidence *held* insufficient to support a finding that jewelry was not sold on wife's personal credit.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by Sam Kruger against Joe Colonna. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Nicholson & Felder, of Wichita Falls, for appellant.

Weeks, Morrow & Francis, of Wichita Falls, for appellee.

CONNER, C. J. The appellee, Sam Kruger, instituted this suit in the district court of Wichita county against appellant, Joe Colonna, upon the following account:

February 10, 1919, one diamond lavalier..... $ 800 00
February 12, 1919, difference in price of la-
valliere exchange ........................... 650 00
June 4, 1919, repairing watch................. 3 00
June 11, 1919, watch ribbon................... 75
September 11, 1920, one diamond bar pin.... 1,750 00

The plaintiff alleged that the jewelry specified in the above account had been purchased from him by the defendant acting through his wife as his duly authorized agent to make such purchases. In a supplemental petition he further alleged that Mrs. Colonna, as the wife of the defendant, was authorized to make such purchases and the same were necessary for her personal adornment, and that there was an implied promise on the part of defendant to pay for the same.

The defendant answered by a general demurrer, a general denial, and specially denied that his wife was his agent for the purchase of said articles; that the same were purchased without his knowledge or consent, and that he did not know that the same were intended to be purchased; that the articles, to wit, a diamond bar pin and diamond lavalliere, were very expensive pieces of jewelry, and such as he at the time was unable to afford; that the goods were sold by plaintiff to Mrs. Virginia M. Colonna on her own personal account and responsibility and were charged to her, and plaintiff looked to her for the payment of the same; that at said time Mrs. Virginia M. Colonna had her own separate estate, and was trading in gas and oil leases as well as other property, and made considerable money thereby.

The defendant further alleged that the two pieces of jewelry mentioned were not necessaries, neither were they reasonable nor proper, and that plaintiff had concealed from the defendant the fact of their purchase.

The defendant in his pleadings acknowledged liability for the items of $3 and 75 cents for repair on watch and watch ribbon, and tendered and deposited the aggregate amount with the clerk for payment to plaintiff.

The cause was tried by the court without a jury and resulted in a judgment for the plaintiff for the full amount sued for. The defendant has appealed.

[1] As preliminary to a disposition of the case on its merits, we will first dispose of an objection made in one of appellant's assignments to the failure of the court to file written findings of fact and conclusions of law From the record relating to this subject, it appears that a formal written motion requesting the court to file his findings of fact and conclusions of law was presented to and filed with the clerk, but no formal bill of exception to such failure appears in the record, nor does it appear that the motion was placed on the motion docket or otherwise called to the attention of the court and a request made for compliance therewith. Under such circumstances no reversible error is properly presented. See V. S. Tex. Civ. Statutes, art. 2058; Bank v. Stout, 61 Tex. 571; Landa v. Heermann, 85 Tex. 1, 19 S. W. 885; Sewall v. Colby (Tex. Civ. App.) 163 S. W. 694. Moreover, the record herein contains a full statement of facts, agreed to by the parties and approved by the judge, from which we conclude that in no event does it appear that the failure of the trial judge to file findings of fact and conclusions of law could reasonably result in prejudice to appellant. See Emery v. Barfield (Tex. Civ. App.) 156 S. W. 311; Barfield v. Emery, 107 Tex. 306, 177 S. W. 952.

[2] Appellant also assigns error to the action of the court in overruling a demurrer to the plaintiff's petition on the ground that Mrs. Colonna, the wife of defendant, had not been made a party to the action. Rev. Statutes, art. 1840, thus reads:

"The husband and wife shall be jointly sued for all debts contracted by the wife for necessaries furnished herself or children, and for all expenses which may have been incurred by the wife for the benefit of her separate property."

As worded in the statute, it would seem to be mandatory that Mrs. Colonna should have been made a party defendant in the suit. The effect of the statute does not seem to have been frequently discussed. We find, however, that the Dallas Court of Civil Appeals, in the case of Whitney v. McMahan, 231 S. W. 1117, held that it was necessary for the husband to have been joined by his wife in the suit. That was a suit, however, against the husband and wife for damages arising from certain repairs to the separate property of the wife, and it was held that the

wife, but not the husband, was liable, the conclusion being predicated upon the act of the Legislature of 1913 amending articles 4621 and 4624 of the statutes (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4624), giving the wife "the sole management, control and disposition of her separate property, both real and personal," and providing that:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children, provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

It was said to be evident from the law referred to that it was the purpose of the Legislature to empower the wife to lawfully make contracts for the improvement of her separate property. If, as declared by the amended statute mentioned, neither the separate property of the husband nor the community property, other than the personal earnings of the wife and the income, rent, and revenue from her property, is subject to the payments of the debts contracted by the wife, then no possible prejudice to the appellant in this case can be attributed to the failure of the appellee to make Mrs. Colonna a party defendant in the suit. The appellee, as plaintiff, did not seek to recover against Mrs. Colonna on her contract for the jewelry in question, but sought a recovery against appellant alone, on the ground that he had authorized the purchases made by the wife, and that they were necessaries, for which the wife had a right to contract. A failure by appellee to establish these allegations. or that appellant authorized the wife's contract or later ratified it, would entitle appellant to complete discharge.

[3] Moreover, article 1840, Rev. Statutes, quoted above, is in the precise language of section 4 of the original act of the Legislature, except that, where the word "shall" in the statute above quoted is used, the word "may" occurs in the original act. See Gammel's Laws of Texas, vol. 3, p. 78. Whether the codifiers of the statutes, in using the word "shall" instead of "may," did so inadvertently, or thereby intended to amend the law in that respect, does not appear, but, however this may be, our Supreme Court, in an opinion by Chief Justice Stayton, in the case of Walling v. Hannig, 73 Tex. 580, 11 S. W. 547, held that in a suit for debt against the husband the wife was neither a necessary nor proper party defendant when there is no prayer to subject the separate property of the wife to the payment of the debt. We have not found where the decision in Walling v. Hannig has been overruled or modified by any later decision, and we therefore hold that the court did not err in overruling the appellant's exception to the plaintiff's petition on the ground that plaintiff had failed to make the wife a defendant in the suit.

[4] This brings us to a consideration of the material questions in the case. These may be stated as: First, whether in the purchases under consideration the wife acted as the agent of appellant; second, whether the judgment can be supported on the theory that after the purchases were made appellant ratified the act of the wife in purchasing the articles and expressly or impliedly promised to pay for them; third, whether or not the evidence will support the conclusion that they were necessaries within the meaning of the law making the husband liable for the purchase price; and, fourth, whether the sale of the jewelry to Mrs. Colonna was on her individual credit alone.

The foregoing questions are determinable from the evidence. We cannot, within reasonable limits, set it all forth, but it has been carefully considered, and therefrom we conclude that the purchase of the lavalliere and bar pin specified in appellee's account was made by the wife in the absence of the husband and without his knowledge or actual consent, and that appellant at no time expressly authorized his wife to make the purchases, nor can it be said that he impliedly did so, unless it can be further said that the articles were necessaries, within the meaning of the law obligating the husband to pay. Nor does the evidence warrant the conclusion that appellant ratified the sale after it was made and expressly or impliedly promised to pay therefor. The only evidence that can be said to tend to support any such a conclusion is evidence to the effect that some time after the sale appellant hypothecated the lavalliere for moneys borrowed by the wife. But this circumstance was explained by appellant without contradiction by his testifying, in substance, that, while he had observed the fact of his wife wearing the jewelry, she had informed him that it had been paid for by her, and that he was without information to the contrary at the time of the hypothecation. So that we think the evidence as a whole, to wit, the evidence showing appellant's hypothecation of the lavalliere, together with the fact that subsequent to the purchase he had observed his wife in possession of the jewelry, is insufficient to support a conclusion that appellant so ratified or impliedly promised to pay for the jewelry as to make him liable on these grounds.

[5] Was appellant therefore liable on the ground that the articles in question were necessaries? In 13 R. C. L. p. 1198, §§ 230 and 231, it is said:

"Marriage imposes on the husband the general duty of supporting his wife, and, if he is derelict in this duty, he is liable to third persons who furnish necessaries to his wife. His liability in this respect is not abrogated by statutes enabling the wife to hold to her own use property acquired by her, and otherwise enlarging her rights and liabilities. But, as the husband has the right primarily to say what are necessaries with respect to his wife, and who shall furnish them, he cannot ordinarily be held liable for articles purchased by his wife when he has not neglected or refused to furnish her with suitable support. So a person seeking to charge a man for necessaries supplied to the wife must show not only that the articles supplied were necessaries, but also that the husband has neglected to supply them; the presumption being that he is not liable. * * *

"It has sometimes been stated that the liability of a husband for necessaries furnished his wife is based on her implied agency. This, however, is not the proper basis of liability, as appears from the established principle that even an express instruction to a third person not to furnish supplies will not relieve the husband from liability for necessaries furnished if he was in default as to her support. Again, if agency were the basis of liability, the consequence would follow that the agency would end with the life of the agent, which is not the case; but it is rather an authority to do for him what law and duty require him to do, and which he neglects or refuses to do for himself, and is applicable as well to supplies furnished to the wife when she is sick, insensible, or insane, and to the care of her lifeless remains, as to contracts expressly made by her."

The quotation made, we think, is fairly expressive of the great weight of authority on this phase of the subject, which we need not verify by further citations. The more difficult question is to determine whether or not the articles in question were necessaries, in the sense that appellant was liable for the purchase price. Numerous judicial definitions of the term "necessaries" may be found in Words and Phrases, vol. 5, p. 4693. Among others, we quote the following:

"Those necessaries which a husband is bound to furnish his wife are described in general as such articles of food or apparel or medicine, or such medical attendance and nursing, or such private means of locomotion or private habitation of furniture, or such provision for or protection in society, and the like, as a husband, considering his ability and standing, ought to furnish the wife for her sustenance and the preservation of her health and comfort."

"The term 'necessaries,' as applied to the duty of the husband toward his wife, has a more comprehensive meaning than the word 'necessary,' when used in connection with furnishing the articles. The former means such articles, services, or the like as the husband, considering his ability, ought to furnish the wife for sustenance and the preservation of her life, health, and comfort. The latter one

has reference to the necessity of their being furnished."

"What constitutes 'necessaries,' within the meaning of the rule that the husband is bound to supply necessaries for his wife, is a matter of relative fact, depending upon the standing and circumstances of the parties."

"The term 'necessaries' in the common-law rule that the husband was bound to provide necessaries for the wife and the children was not confined to food and clothing, but was construed to include articles of utility and ornament ordinarily enjoyed by families of persons of estate and station similar to that of the husband."

It will be thus seen that the term "necessaries" is variable and latitudinous in its significance, and we therefore from the evidence before us have not felt quite able to say that as a matter of law the articles purchased by appellant's wife were not necessaries, this ordinarily being a question of fact, which, in the instance before us, was resolved in favor of the appellee in the trial court. We feel no hesitation in saying, however, that as presented in the present record we think the evidence insufficient to support the finding of the court below that the lavalliere and bar pin were necessaries in the sense that appellant, as the husband of Mrs. Colonna, was bound to pay therefor, notwithstanding the fact that he knew nothing of the purchase and has since in no way sufficiently confirmed or ratified the same. A fair construction of the evidence is to the effect that at the time of the purchase appellant was without a home, living in a rented flat, and only had some $8,000 in the stock of merchandise he was engaged in retailing. It is true there was evidence that both appellant and his wife moved in good circles of society, had an automobile, and that their flat was one of the popular flats of the city. But we think it hardly fair to assume that these circumstances would justify compulsion on the part of the husband to pay out of his estate so large a sum for mere articles of adornment not shown to be otherwise useful or needed to maintain the marital relation in peace and comfort.

[6] However, we will not discuss this branch of the case further as the evidence upon another trial may be different, but will now pass to the further question of whether the evidence shows that in the sale in question credit was extended to Mrs. Colonna alone. It is said, again quoting from 13 R. C. L. p. 1200, § 233, that:

"Though there are decisions to the contrary, the better view seems to be that in order to render a husband liable for necessities furnished his wife they must have been furnished on his credit. As has been said, if a tradesman furnishes goods to a wife, and gives the credit to her, the husband is not liable, though she was at the time living with him, and a fortiori he is not liable if they were living apart. Whether credit in any case is given to the wo-

man or her husband is a question of fact to be determined by the jury. The presentation of a bill to the wife is not conclusive evidence that the necessaries were supplied solely on her credit instead of the credit of her husband."

See, also, 21 Cyc. p. 1230, § 8, where it is said:

"If one sells necessaries to a married woman and extends credit to her personally, or upon the credit of her individual estate, the husband will not be liable."

Many cases are cited in support of the text as above quoted from the authorities named, and in a case arising in our own court, to wit, Crosby v. A. Harris & Co., 234 S. W. 127, the following was said in an opinion by the Court of Civil Appeals at Dallas:

"Now the rule is that, if one sells necessaries to a married woman and extends credit to her personally, or upon the credit of her individual estate, the husband will not be liable. Likewise, when one supplying the wife with goods has agreed with the husband not to hold him liable, no recovery can afterward be had against him. The evidence shows very conclusively that the $605 of the account above mentioned was sold, as we have pointed out, to Mrs. Crosby personally and on her credit alone, and with the expectation that she, and not the appellant, would pay the same. This being true, it follows that in no event can the appellant be held liable therefor. 21 Cyc. p. 7230; Gafford v. Dunham, 111 Ala. 551, 20 South. 346; Mitchell v. Treanor, 11 Ga. 324, 56 Am. Dec. 421; Dixon v. Hurvell, 8 C. & P. 717, 34 E. C. L. 980."

[7] Tested by the rule so announced, we think the evidence overwhelmingly shows that appellee sold the lavalliere and bar pin to Mrs. Colonna on her own credit alone. The evidence shows without dispute that they were charged to her on the books; that at the time Mrs. Colonna was dealing on her own account in oil leases; that upon one transaction of the kind she made $5,000; that previously she had received some $5,500 from property of her own, sold in another state; that several months after the purchases appellee presented to appellant for payment a bill for a lamp which did not include the charges for the lavalliere and bar pin, or contain any reference thereto, nor does the evidence show that appellee at that time referred to the wife's purchase of the jewelry; that a month or more after the sale appellee prepared and accepted from Mrs. Colonna notes for the purchase price, upon which she paid, as appellee states, some $800. Upon the trial appellee also offered the testimony of Mrs. Colonna taken by deposition, thus vouching for her credibility. Among other things, she testified:

"My name is Mrs. Virginia Colonna. I am 25 years old. My residence is Wichita Falls, and I am the wife of the defendant, Joe Colonna.

"I did purchase the diamond lavalliere and bar pin and articles mentioned in plaintiff's petition. My husband, Joe Colonna, did not know anything about my making said purchases at the time that I made them.

"I did pay the plaintiff a sum of money on said purchases, but do not remember how much.

"I did not consult the defendant about purchasing from the plaintiff the articles mentioned, or any of them, before I made the purchase.

"The defendant did not make to the plaintiff any payment on any of the articles that I purchased from the plaintiff. I made all of the payments myself; I do not remember how much, but quite a good deal.

"At the time I made said purchases the plaintiff stated these articles could be paid for as I could conveniently do so.

"At the time that I made these purchases I was not acting as the agent for the defendant; the defendant knew nothing of these purchases.

"I pledged the diamond bar pin at the bank. I haven't it now.

"The defendant did not authorize me to purchase any of the articles mentioned in the petition from the plaintiff. The defendant did not know about my purchasing them until after I had bought them.

"The plaintiff insisted that I should take these articles and pay as I could.

"Plaintiff said not to tell the defendant about these purchases; he said you might think plaintiff was allowing too much credit. * * *

"I have been married to the defendant two years.

"I now possess one ring, watch, and pin which I did not possess at the time of my marriage to the defendant. The ring was purchased from Dave Paul, Wichita Falls; watch from Joe Art; pin in St. Louis. I do not know the cost of these articles.

"I bought one lamp, a watch ribbon; had some repair done; also bought lavalliere, diamond pin mentioned in plaintiff's petition; do not remember the time the lamp and watch ribbon were purchased and the repairs were made; neither do I remember just when the diamond lavalliere and diamond bar pin were purchased, but think it was about the time mentioned in plaintiff's petition. The defendant several times instructed me not to purchase jewelry on his credit, but I do not remember just when it was. * * *

"I did wear the articles mentioned. My husband did see them at various times. He asked me where I got them. My answer was they were bought at Mr. Kruger's. My husband did not know for some considerable time after I purchased these articles that I had the same. I did not try to conceal this from Mr. Colonna. I intended to pay for same as soon as I got some money in.

"I expected to pay the plaintiff myself, which was the understanding between Mr. Kruger when the diamonds were purchased. I did not consider that my husband had anything to do regarding these purchases. It was fully understood between Mr. Kruger and myself as to when and how they were to be paid for.

"It is not a fact that I turned these articles over to my husband or that he ever borrowed any money on same. It is a fact that I pledged the diamond lavalliere to the bank for money

which I borrowed from them; plaintiff having refused to take it back, as I asked him to do in order to pay the debt. * * *

"Plaintiff told me that it would be best not to tell my husband about these purchases, as he might think something wrong in giving me so much credit.

"I have never lived with the plaintiff. I have lived with the defendant all but two weeks.

"I received the money that I paid to the plaintiff on these purchases from speculation in oil.

"My husband allowed me to purchase what I thought was necessary for my comfort, but he did not allow me to purchase luxuries; I did have a right to buy necessaries; he paid part and I paid part; we went about fifty-fifty in this."

We think we have sufficiently indicated the evidence to show that it fails to support the judgment. The judgment will accordingly be reversed, and the cause remanded.