33234.   BLAND *v.* DAVISON-PAXON COMPANY *et al.*

DECIDED MARCH 14, 1951.

*Robert L. O'Neil*, for plaintiff in error.

*Houston White, Emory A. Schwall, Norris C. Broome*, contra.

MacINTYRE, P. J.   The plaintiff, Davison-Paxon Company, sued the defendants, George A. Bland and Mrs. Dottie Hesters Bland, formerly Mrs. George A. Bland, jointly and severally upon an open account for $716.23, principal, with interest; attached an itemized statement of the account; and asked for a joint and several judgment against them. Hereinafter Mr. Bland will be referred to as the husband and Mrs. Bland as the wife. The separate answers of the husband and the wife both denied

any liability to the plaintiff on the account individually, jointly or otherwise.

The court charged the jury: "Now, gentlemen, I charge you in this case that, from the pleadings and from the evidence, in all events your verdict must be for the plaintiff in the sum sued for—$716.23 principal, together with interest. Now, the issues for you to determine is [are] against which or both defendants and in what amounts, if any, you divide it between them, or whether you find it all against both of them, and I will try to charge you the law to give you some instruction to aid you in arriving at that decision." The judge then charged the jury the law to which it should apply the evidence in determining the verdict.

The defendant husband contends that the offer in his answer to pay the debt of his former wife was not an admission of liability, and that the plaintiff failed to prove "the receipt and delivery" of all the articles sued for, and that "this issue of receipt and delivery would be at most a jury question, and the charge that the plaintiff must recover the full amount sued for was unauthorized."

The defendant wife testified in part: "You ask that I look at this list of accounts and say whether there are any of them that I know were not sold or delivered to one or the other of we two. I would say they are familiar. In other words, I have seen most of the things there used at the house. I would say that either he or I bought all of it. . . I would say, then, that, to the best of my knowledge, that statement in here is correct, that those things were sold and delivered at the prices set out there. I do not care to look at any of these at all today further to verify them. [She had previously examined the account.] I am satisfied they were sold to the defendant, Mr. Bland, or to me. . . There are none of those purchases here that were not necessary in accordance with my station in life. As to why they were necessary, they were what I was accustomed to. I had some others like some of them at the time—perhaps the colognes and perfumes. Perhaps I had given out and that's why I purchased more." The wife further testified: that the defendant husband had a large income, and after he left her she got no alimony and had no other means of support;

that she did not buy any of the merchandise listed in the account sued on after the award of temporary alimony; that she did not give her husband any cause for leaving her, but stayed at home where he left her while she was recuperating from a serious operation; that after the operation her husband was always out of town and she never knew where he was, and when she tried to contact him he avoided her; .that, at the time she bought this merchandise, her husband was giving her no money whatsoever; that he did not leave her any money when he left on the date of the separation; that he left her flat on her back sick from a serious operation; that when he left he went to Miami on a vacation on his yacht and also to Jekyll Island; that his mother gave him from $1000 to $1400 per month; that on numerous occasions he tried to evict her from the house after the separation; that she had been confined two weeks in bed after returning home from the hospital at the time of the separation; that she frequently traveled with her husband on business and pleasure trips to Miami, New Orleans, and Havana, during the time before the separation; and that she discussed the matter with her husband before she opened the account at Davison's.

The husband in his answer prayed that "the plaintiff be awarded judgment for $190.79 [a part of the total sum of $716.23 sued for], and that the cost of this case be cast against plaintiff." The husband testified upon cross-examination that some of the articles in the account (three of them) were bought by him personally and charged to the account.

The defendant husband served the plaintiff with notice to produce the application which the wife signed when the account in question was opened. The husband without objection introduced a printed form of an application which was, according to Mrs. Milligan, collection manager for the plaintiff, the same form used by the plaintiff's customers at the time of the application here in question. Mrs. Milligan testified that this was the same kind of printed form which was used by the defendant when she applied for credit and which was signed by the wife alone. This form contained the following provisions: "This application is made to secure the opening of a joint account for the benefit of my husband and myself and it is under-

stood that the extension of credit shall create an original obligation jointly and severally against my husband and myself. Carrying the account in the name of my husband or myself shall be considered as a matter of convenience and shall not affect our joint and several liability."

The defendant husband seems to contend that—when the written application for credit was signed by the wife alone and credit was extended thereon and the merchandise was sold and delivered pursuant thereto—even with the defendant wife's explanation of the signing of the application, this was conclusive proof that she purchased the merchandise upon her individual credit exclusively. Relative to this printed form of the application, the wife testified: "You ask me if I remember signing a paper like that when I went in there and opened up the account at Davison's. I don't know whether it was exactly like this, but I signed a paper. I know that. When I signed that paper I told my husband when I went back home that I had signed a paper at Davison's opening up an account. As to whether I told him whether or not I had opened up an account for myself alone, or for him, or for both of us, jointly and severally, we could always use any account that was opened, both of us could. That was always understood. I told him that was what I did at that time, that I had opened up the account for both of us, jointly and severally. . . I don't recall exactly what I told my husband after I had signed the papers at Davison's. He knew where I was going before I left to go down. It had been discussed the night before. As word for word, how I stated it, how we discussed it before going down, I don't remember that far back. I didn't bring the signed contract home to show him. No one ever does that. I did not do that. I don't recall but I imagine I read this over very thoroughly before I signed it. I usually do. I don't remember whether I did on this occasion. As to whether I told him everything that was written and printed on it, I didn't tell him word for word everything that was printed on it. It wasn't necessary. I told him we had opened an account. It was discussed thoroughly before it was opened and afterwards. The words I used I don't recall. You ask if I know what is meant by a joint and several liability. To my knowledge, it would be an account that both of us used as

husband and wife. That's the way [I] explained it to my husband, that I had opened an account that both of us would use. As to whether that is what I meant in answering questions on cross-examination by the attorney for the plaintiff in this case, I don't know technical terms. I know the account was opened for the purpose of being used by Mr. Bland and myself for whatever we wanted to use it. I did not understand when I placed my signature upon this contract that I was making myself personally liable for this account."

We think that the written application, together with the testimony of the wife explaining the circumstances under which she signed it, would not demand a finding that she purchased the merchandise on her individual credit exclusively, but that this was a jury question. If this was a jury question, then there were other phases of the evidence which would authorize a recovery against the defendants jointly, or against the wife individually, or against the husband individually in such amounts as were shown by the evidence. The evidence showed that the plaintiff sold and delivered every article of the merchandise stated in the account, and that either the husband and wife owed the plaintiff jointly or each owed the plaintiff individually in amounts as the evidence might show; and the charge of the court, which we have quoted above, was not error for any reason assigned when the court's charge is considered in its entirety.

The defendant husband contends that, even if the evidence might authorize a recovery on the theory of necessaries furnished the wife while she and he were living together, it would not authorize a verdict for necessaries between the time they were separated and the time temporary alimony was awarded to the wife; but that in neither event could the verdict stand if it was not pleaded that the merchandise purchased were necessaries. Code § 53-510 provides: "The husband shall be bound to support and maintain his wife, and his consent shall be presumed to her agency in all purchases of necessaries suitable to her condition and habits of life, made for the use of herself and the family. This presumption may be rebutted by proof." Code § 53-508 provides: "The husband shall be bound for necessaries furnished to the wife when separated from him, subject to the limitations herein provided. If the wife shall be living in adul-

tery with another man, the husband shall not be liable. Notice by the husband shall not relieve him from liability, if his wife shall be separated from him by reason of his own misconduct. If she shall voluntarily abandon him without sufficient provocation, notice by the husband shall relieve him of all liability for necessaries furnished to her." In *Sulter* v. *Mustin*, 50 *Ga*. 242, 245, it is said relative to necessaries: That "the husband is only liable for necessaries bought by or furnished to the wife. And this is true, whether the liability turn on the presumed agency of the wife to purchase necessaries in his name, whilst they are living together, or upon his obligation to support her in case they be separated. In both cases it is only for necessaries that the husband is liable." As to where the burden of proof lies in both instances, see *Mitchell* v. *Treanor*, 11 *Ga*. 324.

The suit here is upon an open account and could have been amended to show that all or some of the items of the account were purchased as necessaries by the wife. Such an amendment would not have changed the cause of action, which is for merchandise sold and delivered; and, where evidence was introduced which would authorize a recovery for the plaintiff, if the liability for necessaries had been pleaded by the plaintiff in such an amendment, and the defendant does not object to such evidence, he waives his right to require the plaintiff to amend to cover such evidence; and where the pleading, if so amended, would have been supported by the evidence, the verdict will not be disturbed. *Maynard* v. *Ponder*, 75 *Ga*. 664, 669; *Napier* v. *Strong*, 19 *Ga. App*. 401 (91 S. E. 579). In the *Napier* case, supra, the rule is stated thus: "A plaintiff must recover upon the cause of action as laid in the petition; and a verdict in his favor is illegal when the evidence fails to support the cause declared on, even though a different cause of action may appear from testimony admitted without objection. But evidence, admitted without objection, which supports what is in fact the same cause of action, although it might have been excluded on objection, may be sufficient to authorize a recovery, if, under the facts of the case, the petition could by amendment have been so conformed to the proof as to render such testimony relevant." If an amendment to this effect had been tendered by the plaintiff, it should have been allowed and the evidence

would undoubtedly have been admissible beyond question; but the defendant did not object to such evidence, and the verdict, under the pleadings and the evidence, would have been authorized, and, under these circumstances, the verdict in this case will not be disturbed. *Maynard* v. *Ponder*, supra.

Even if there was no express agreement to pay for the necessaries, we think that, under the evidence here, there was an obligation to pay for the merchandise purchased by the wife, if they were necessaries purchased during the time they were living together as husband and wife, or thereafter when they were separated up to the time she was awarded temporary alimony. *Mitchell* v. *Treanor*, 11 *Ga.* 324. The defendant wife testified that the husband had not made provision for her support during this period, the plaintiff having carried the burden of showing that the wife was not subject to any of the limitations which would defeat her right to purchase necessaries after their separation.

Even if the application to the plaintiff for credit and the extension of such credit should constitute a contract, and some or all of the articles purchased pursuant thereto were necessaries, yet the suit here, not being on a contract itself, may be maintained upon an open account although the indebtedness on the open account had its origin in an antecedent contract. This might be done for the purpose of disclosing pertinent facts and circumstances under which the sale and delivery were made. *Tumlin* v. *Bass Furnace Co.*, 93 *Ga.* 594 (20 S. E. 44); *Ittner Bros.* v. *Farmers State Bank*, 15 *Ga. App.* 235 (82 S. E. 909). The application for credit and the extension of such credit is evidence merely of liability and may be used as such. This is but an application of the rule stated in *Chatham Abattoir & Packing Co.* v. *Painter Engineering Co.*, 28 *Ga. App.* 383 (111 S. E. 82): "An action may be brought and sustained upon an open account for goods sold or services rendered, although there may have been a special contract in writing governing the subject-matter of the suit, where it appears that the plaintiff has fully performed his part of the agreement and nothing remains to be done except for the other party to make payment. *Tumlin* v. *Bass Furnace Co.*, 93 *Ga.* 594 (2, 3) (20 S. E. 44); *Burch* v. *Harrell*, 93 *Ga.* 719 (20 S. E. 212); *Southern Printers Supply Co.*

v. *Felker,* 125 *Ga.* 148 (54 S. E. 193) ; *Shedd* v. *Standard Sewing Machine Co.,* 21 *Ga. App.* 373, 376 (94 S. E. 646). In such a suit, the contract not being declared on, its breach does not constitute the cause of action, but the contract can be used merely as evidence of the indebtedness. *Chapman* v. *Conwell,* 1 *Ga. App.* 212 (2) (58 S. E. 137) ; *Pittman* v. *Hodges,* 13 *Ga. App.* 25, 26 (78 S. E. 688) ; *Ittner* v. *Farmers State Bank,* 15 *Ga. App.* 235 (82 S. E. 909)." The mere fact that there had been an application for a joint and several account to purchase merchandise, and it had been approved by the plaintiff, does not make such a contract as requires pleading it by the plaintiff when the plaintiff seeks only to recover for the price of the merchandise, sold and delivered (in a suit on an account). *Shedd* v. *Standard Sewing Machine Co.,* 21 *Ga. App.* 373, 376 (94 S. E. 646) ; *Alabama Construction Co.* v. *Continental Car & Equipment Co.,* 131 *Ga.* 365 (62 S. E. 160) ; *Cooney* v. *Foote,* 15 *Ga. App.* 455 (83 S. E. 896). In the instant suit, the plaintiff had performed its part of the contract by selling and delivering the merchandise, and nothing remained to be done but make money payments. The cause of action is upon an open account with an itemized statement of the account attached. The action is not brought on the written application in question, but the written application might be introduced in evidence, not for the purpose of counting upon it as a distinct cause of action, but for the purpose of disclosing the pertinent facts and circumstances under which the sale and delivery were made. *Tumlin* v. *Bass Furnace Co.,* 93 *Ga.* 594 (supra) ; *Johnson* v. *Quin,* 52 *Ga.* 485; *German-American Insurance. Co.* v. *Davidson,* 67 *Ga.* 11, 13. The plaintiff could have recovered against the defendants jointly or severally, as shown by the evidence; and the verdict for the full amount against the defendant husband was authorized by one phase of the evidence, and we will not disturb such verdict. What has been said in this division of the opinion disposes of the necessity of considering individually grounds 4, 5, 6, 8, 9, 10, 11, 12 and 13 of the motion for a new trial.

2. The ground of the motion for a new trial which excepts to the court's charge on the effect to be given a letter as notice that the husband would not be liable for the debts of his wife

does not have the letter or its substance set out in the ground or attached to the ground, and is so incomplete as to present no question upon this point for consideration by this court.

3. In ground 14, the defendant husband complains "because the court erred in overruling defendant Bland's objection to the question: 'At the time you married was your income substantially the same or was it more or less?' asked of the defendant George A. Bland, called by plaintiff as opposite party on cross-examination, upon the ground that said question of necessaries was immaterial because the suit was on contract alleging joint and several liability, the court ruling: 'I overrule the objection at this time and will let him go into the question of necessaries.' " This suit was not upon a contract, but upon an open account for goods sold and delivered, and hence the question was not subject to the objection urged.

4. In ground 15, objection is urged that the court erred in overruling the defendant husband's motion for a nonsuit. The overruling of a motion for a nonsuit can not be reviewed by a motion for a new trial, but should be made the subject of direct exception. *Newsome* v. *Shipp,* 204 *Ga.* 329 (49 S. E. 2d, 827); *Dickson* v. *Citizens Bank & Trust Co.,* 184 *Ga.* 398 (191 S. E. 379), and cit.

5. With reference to ground 16, counsel for the defendant husband seems to contend that the court erred in not charging that the written application would not bind the husband unless he signed it, and that the principle which the court did charge was in violation of the statute of frauds. A defense under the statute of frauds must be raised in the trial court or it will be deemed to have been waived. So far as the record shows, such a defense was not raised or even mentioned in the trial court. There was no request to charge in this case; and we think that, when the charge is considered as a whole, the effect of the charge was to instruct the jury that the wife alone would be liable for the account if the husband did not sign it or acquiesce in her signing of the application or had not ratified the account. There is no merit in this ground.

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*